Garner Appeal.

Submitted June 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Calvin S. Drayer, Jr.,* and *Rhonda Lee Jordan,* Assistant Public Defenders, for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., September 23, 1974:

A petition was filed in the Montgomery County Juvenile Court on February 21, 1974, by William Schlachter, Director of the Child Welfare Services of Montgomery County, in the interest of Donna Garner. Donna is fourteen years old, and resides with her mother. The petition alleged that Donna repeatedly exhibited extremely incorrigible behavior, including constant truancy from school, which recurred despite Donna's repeated promises that she would go back to school and attend classes.

The petition also alleged the following circumstances:

On October 22, 1973, with the consent of Donna's parents, the lower court awarded temporary custody of Donna to the Child Welfare Service which placed Donna in the Good Shepherd Diagnostic Center in Philadelphia. On October 23, 1973, with her parents' consent, Donna entered the Good Shepherd Diagnostic Center. On October 28, 1973, Donna left the grounds with her mother and was later reported to have run away. On October 29, 1973, Donna went to her mother's home, where she was found on October 30, 1973.

Donna requested that she not be returned to the Philadelphia Center, and promised to attend school

regularly if she were permitted to stay at home. She was re-registered in school, but was truant after a few days. As a result of this truancy, an application was made for Donna at the Topton Lutheran Home, where she was admitted on January 29, 1974. On that same day, Donna told her caseworker that she had spent the previous Saturday night driving a friend's car, and that she had stayed out all night.

On February 4, 1974, Donna ran away from the Topton Lutheran Home. No one knew her whereabouts until February 13, 1974, when she returned to her mother's home. Although she had agreed to return to Topton in a telephone conversation with her caseworker, when the caseworker arrived, Donna refused to move or to speak, despite the efforts of her mother and the caseworker.

The petition concluded that, while Donna had been provided with several opportunities to avoid legal action, she had failed to use any to her advantage, because she continually refused to listen to anyone—whether her mother or father, her caseworker or personnel of a school or placement facility. On the basis of Donna's "incorrigible behavior", the petitioner requested that Donna be adjudicated a delinquent and placed in a security setting.

At her adjudicatory hearing on March 6, 1974, Donna admitted running away from her mother's home and the institutions in which she had been placed, and also her truancies from school. Donna's counsel also admitted these facts, but denied that they were sufficient to prove Donna ungovernable or delinquent. Judge SCIRICA adjudicated Donna both a delinquent and deprived child under the Pennsylvania Juvenile Act, Act of December 6, 1972, P. L. 1464, No. 333 (11 P.S. §50-101).

At the disposition hearing on March 21, 1974, Donna was released from Montgomery Hall on probation,

in the custody of her mother, upon the condition that she attend school regularly and receive counselling through services provided by the probation department.

This appeal challenges the adjudication, alleging that the trial judge improperly overruled a demurrer to the evidence related to the allegation that Donna is an ungovernable child, and seeking a determination of whether persistent truancy is an act of delinquency or deprivation under the Juvenile Act. The appeal alleges that the finding of delinquency should be reversed, and that Donna should again be placed in the custody and under the supervision of the Child Welfare Service.

The question to be resolved by the trial court on a demurrer to the evidence is whether, accepting as true all the facts already shown and all reasonable inferences therefrom, they are sufficient in law to maintain the issue. *Commonwealth v. Robinson,* 317 Pa. 321, 176 A. 908 (1935); *Commonwealth v. Ernesto,* 93 Pa. Superior Ct. 339 (1928); *McKowen v. McDonald,* 43 Pa. 441 (1863). When the sufficiency of the evidence is also an issue raised on appeal, the reviewing court must examine the entire record, but in a light most favorable to the Commonwealth. *In re Johnson,* 445 Pa. 270, 284 A.2d 780 (1971). See, e.g., *Commonwealth v. Lawrence,* 428 Pa. 188, 236 A.2d 768 (1968). The reviewing court is bound by the rule that a child adjudicated a delinquent is entitled to be declared delinquent only on evidence which demonstrates that the facts on which the determination was made are true beyond a reasonable doubt. *In re Winship,* 397 U.S. 358 (1970); *In re Terry,* 438 Pa. 339, 265 A.2d 350 (1970), *aff'd,* 403 U.S. 528 (1971).

The question we must resolve is whether Donna's actions constituted sufficient evidence of incorrigibility to uphold an adjudication of delinquency. The adjudication of deprivation is not contested.

Section 50-102(2) of the Juvenile Act defines a "delinquent act" as follows: "(2) 'Delinquent act' means: (i) an act designated a crime under the law of this State, or of another state if the act occurred in that state, or under Federal law, or under local ordinances; or (ii) *a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian, or other custodian committed by a child who is ungovernable.* 'Delinquent act' shall not include the crime of murder nor shall it include summary offenses unless the child fails to pay a fine levied thereunder, in which event notice of such fact shall be certified to the court." [Emphasis added.]

A "delinquent child" is one whom the court has found to have committed a delinquent act, and who is in need of treatment, rehabilitation, or supervision.

Section 50-102(4) of the Juvenile Act defines a "deprived child" as follows: "(4) 'Deprived child' means a child who: (i) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals; or (ii) has been placed for care or adoption in violation of law; or (iii) has been abandoned by his parents, guardian, or other custodian; or (iv) is without a parent, guardian, or legal custodian; or (v) *while subject to compulsory school attendance is habitually and without justification truant from school."* [Emphasis added.]

The testimony reveals that Donna was taken to the Good Shepherd Diagnostic Center with her parents' consent, after her mother and father had determined that they could not control Donna's truancy. Donna's mother testified that Donna would not obey when told to go to school. Donna would sometimes leave the house for school, but not stay at school during the day. On most occasions, Donna did not go to school at all, despite directions from her mother that she go.

The record also establishes that Donna did not stay at the Good Shepherd Diagnostic Center, despite the requests of her mother that she do so. Donna ran away from the Center after spending only five days there. This behavior was in defiance not only of the Center's rules, but also of her parents' wishes.

Donna was permitted to remain at home, rather than be returned to the Center, after promising to attend school regularly. However, she did not keep her promise, and, in fact, did not attend classes at all during the months of November and December of 1973, and January of 1974, despite her mother's requests that she do so. During this time, Donna's mother had to pay three fines, due to Donna's truancy. Such behavior supports the lower court's conclusion that Donna is an ungovernable child who needs supervision by the probation department.

In addition to this evidence, there was undisputed testimony from Paul Ernst, Director of the Topton Home Children's Services, which revealed that Donna's disobedience to the rules and regulations of Topton Home began the first night she was there. She refused to move from a chair, to take a shower, or to go to bed, demanding to be taken home to her mother. After several hours of persuasion, Donna did go to bed, but the next morning, refused to arise until the house father personally insisted that she do so. She consistently demanded to see her mother or to be taken home, and upon a refusal, would not move from wherever she was sitting at the time. When she realized, after several such incidents, that Topton Home administrators could not comply with her requests, she ran away from the Home and refused to return. Instead, she ran to a house near Topton Home, in an effort to avoid going back. When she was finally caught, Donna shouted obscenities at the administrators, but did submit.

All was well until the following weekend, when Donna again ran away from the Home with two boys, and began hitch-hiking out of Topton.

Donna ran to a friend's home and from there, was driven to her mother's home.

Mr. Ernst testified that while she was at Topton, Donna cut classes on one occasion and spent the time in the company of two boys. Testimony from Mr. Ernst also established that Donna would engage in temper tantrums and crying spells when confronted with a rule which she was obliged to, yet did not want to, obey. If those antics were not fruitful, she would get angry and refuse to move until she had her way. Mr. Ernst stated that Donna's disobedience "was manipulative" but that he did not see Donna "as a completely delinquent child in terms of a criminal-type child, but so manipulating [sic] that she is headed for a very difficult life." (NT 14) In his opinion, Donna is an ungovernable child who refuses to cooperate.

Another witness, Gwendolyn Morgan, testified to other specific actions of Donna's disobedience during her brief stay at Topton.

When Donna took the stand, she admitted all these facts, and further admitted the facts alleged in the petition which began this proceeding.

In reviewing this record, it is clear that the trial judge acted properly in overruling the demurrer and in adjudicating delinquency. The evidence was more than adequate to prove Donna a delinquent beyond a reasonable doubt. The Juvenile Act does not require that an adjudicated delinquent be a criminally-involved child. Delinquency can be shown, as it has been here, by habitual disobedience to a parent, guardian, or custodian who makes reasonable and lawful requests of the child. In this case, Donna chose to enroll in Topton Home, and knew the rules and regulations she would live by before she was admitted. (NT 38) She promised

484

to abide by these rules, but failed to keep that promise as of her first night there. Her behavior was incorrigible, and established that Donna is an ungovernable child, in need of supervision.

This appeal also alleges that an adjudication of delinquency is not proper under the Juvenile Act, when the basis for that determination is persistent truancy. We agree that the Juvenile Act establishes that a child who is habitually truant without justification is a deprived child under §50-102(4)(v), and not a delinquent child. However, such an allegation is of no moment in the instant case. Donna has been adjudicated both delinquent *and* deprived. Both determinations are supported by the evidence—the adjudication of delinquency by Donna's habitual disobedience and that of deprivation by her habitual truancy.

Judgment affirmed.