375 A.2d 803

**In the Interest of Rhonda DelSIGNORE, a minor.**

**Appeal of Rhonda DelSIGNORE, a minor.**

Superior Court of Pennsylvania.

Submitted April 12, 1976.

Decided June 29, 1977.

150

152

Dominick Motto, New Castle, for appellant.

Frank G. Verterano, New Castle, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On September 9, 1975, appellant was adjudicated a delinquent child under the Juvenile Act[1] and was ordered placed in Waynesburg Youth Development Center. On this appeal she argues that the evidence adduced at the adjudication hearing was not sufficient to support the finding of delinquency. We affirm.

1

The petition, which was filed by Lawrence County Child Welfare Services on August 25, 1975, alleged that appellant "is a delinquent child within the meaning of the *Juvenile Act* in that she committed specific acts of habitual disobedience of the reasonable commands of her father and is ungovernable." We agree with appellant's contention that the evidence was insufficient to support this allegation. There was no testimony that appellant had ever (much less habitually) disobeyed her father. Even if we resist the temptation to be literal, and read "father" in the petition to mean "parent, guardian, or other custodian," as the lan-

1. Act of Dec. 6, 1972, P.L. 1464, No. 333, § 1 *et seq.*, 11 P.S. § 50–101 *et seq.* (Supp.1976).

guage of the Act has it, 11 P.S. § 50–102(2)(ii), the evidence would still be insufficient.[2]

Appellant lived for a time with her sister, Mrs. Monaco, and her sister's husband. Mr. and Mrs. Monaco's testimony established that appellant "took tantrums" in response to certain rules set down by them, but they did not say that on these occasions appellant refused to obey the rules. Mr. Monaco did state that appellant refused to go with them on a trip to visit Mr. DelSignore at the Cleveland Clinic. However, one instance of disobedience cannot alone be taken to satisfy the statute's definition of a delinquent act as "a specific act or acts of *habitual* disobedience." 11 P.S. § 50–102(2)(ii) (emphasis added). To be sure, the Act says "a specific act." What is a "specific act . . . of habitual disobedience?" The phrase comes close to nonsense (a single act of repetition?); but reading the Act with some forbearance leads us to suppose that the Legislature intended that a "delinquent act" may be proved by evidence of a single act of disobedience, provided there is also evidence of surrounding circumstances that suggest that the disobedience is part of a pattern of behavior. (In most cases it would seem that such evidence would amount to a showing of "specific . . *acts* [not act] of habitual disobedience.") Here, we find no such suggestion. There does appear to be inherent in appellant's nature a certain resistance to and rebelliousness against persons in authority and their commands; but the evidence taken as a whole demonstrates that usually—with the single exception of the visit to Mr. DelSignore—appellant obeyed those commands, albeit after making a fair fuss.

## 2

If the allegations of disobedience and ungovernability were the only basis for the petition, we should reverse for

**2.** We emphasize that our discussion of this point should not be taken to approve the notice given in this case. *Cf. Re Gault,* 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967): due process requires "that the child . . . be notified, in writing, of the *specific charge or factual allegations to be considered at the hearing* . . ." (Emphasis added)

insufficiency of the evidence. However, other evidence was introduced to show that appellant had committed a crime, which would constitute a delinquent act under 11 P.S. § 50–102(2)(i).

a

■ Appellant argues that we should not consider the evidence that she had committed a crime; since the petition did not charge that she had committed a crime, she says, evidence that she had may not serve as a basis for a finding of delinquency. The difficulty with this argument is that counsel did not make it below; it is therefore waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■ Appellant has attempted to overcome the doctrine of waiver, first, by arguing that the error not objected to was "basic and fundamental," and second, by alluding to "effective representation of counsel." The first argument is of little consequence. While juvenile proceedings are not quite civil and not quite criminal, *see* Kaufman, Book Review, *Pursuing Justice for the Child* (edited by M. Rosenheim) (1976), 90 Harv.L.Rev. 1052 (1977), and thus not clearly under either *Clair* or *Dilliplaine, supra,* the purposes of the waiver doctrine argue for its application in such proceedings. Indeed, we have applied it, although without discussion, in a delinquency case. *Appeal of Cowell,* 243 Pa.Super. 177, 186, 364 A.2d 718, 722 (1976). It follows that appellant may not now invoke the doctrine of basic and fundamental error, for it was discarded by *Clair* and *Dilliplaine.* Appellant's second argument, however, is of some substance.

■ If this were a purely criminal case, counsel could under certain circumstances argue on appeal a claim not preserved below, by alleging and proving—in most cases *via* a remand under *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975)—that he was ineffective in failing to preserve the claim. *See Commonwealth v. Matt,* 249 Pa.Super. 98, 375 A.2d 777 (1977). However, since this is not a purely

criminal case, the doctrine of ineffectiveness of counsel is not automatically available. A criminal defendant's right to effective counsel is based on the Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). A child's constitutional rights in a juvenile proceeding are based entirely on the Due Process Clause of the Fourteenth Amendment. *Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Thus the standard for determining whether the right to counsel has been denied may be different depending on whether the defendant is a criminal defendant or a juvenile. We need not decide this issue now.[3] Counsel has not in fact argued that he was ineffective below; rather, he has argued that appellant's "right to have representation of counsel was violated because counsel could not effectively represent her where no opportunity was given to meet and counter specific allegations of fact." Appellant's Brief at 25. This is no more than a re-phrasing of the very argument not made below. If the evidence that appellant had committed a crime caught counsel by surprise, because the petition had not alleged any crime, he should have informed the lower court. Since he did not, the lower court could correctly base its finding of delinquency on that evidence, provided always that the evidence was sufficient.

**3.** We also leave for the appropriate case the issue of how and when a juvenile might raise the issue of ineffectiveness of counsel. Presumably it may be raised on direct appeal, by analogy to the rule in criminal cases. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). If, however, appellate counsel does not raise the issue, then the juvenile will not have an avenue of relief under the Post Conviction Hearing Act, Act of Jan. 25, 1966, P.L. 1580 (1965), § 1 *et seq.*, 19 P.S. § 1180-1 *et seq.* (Supp.1976), since the Act applies only to one who has been convicted of a crime. 19 P.S. § 1180-3(a). A delinquent who is incarcerated might seek a writ of habeas corpus. *See U.S. ex rel. Kirk v. Kirkpatrick*, 330 F.Supp. 821 (E.D.Pa.1971); *Commonwealth v. Sheehan*, 446 Pa. 35, 285 A.2d 465 (1971); *Commonwealth v. McCarty*, 58 Berks L.J. 107 (Quarter Sessions Ct. 1966). But what of a delinquent who, though not incarcerated, nevertheless wishes to challenge his adjudication in order to attempt to rid himself of the stigmatizing term "delinquent"?

b

■ In reviewing the sufficiency of the evidence to support an adjudication of delinquency, we must find that the evidence meets the standard of "beyond a reasonable doubt." *Johnson Appeal*, 445 Pa. 270, 272, 284 A.2d 780, 781 (1971); *Garner Appeal*, 230 Pa.Super. 476, 326 A.2d 581 (1974). We must examine the entire record, but in the light most favorable to the appellee. *Id.*

■ The testimony about the allegedly criminal incident was uncontroverted. On August 23, 1975, appellant was seen at 1:00 a. m., jumping out of a window in her father's house. (She had not lived with her father since the adjudication of deprivation on February 11, 1975.) She was in the company of two young men who appeared to be loading something into the trunk of a car, and she was wearing a long brown fur coat. Mrs. Monaco (appellant's sister) visited her father's house, apparently the morning after this incident, and observed that the bedroom had been "ransacked." She was sufficiently familiar with the contents of the room to testify that certain items were missing:

There was money taken, about $600 dollars, silver coins— you know, silver coins, some jewelry, diamond ring and a diamond tie tac of my father's, there were four coats taken out of the cupboard, and . . ..

Q. Describe the coats for us.

A. There was three leather coats.

Q. Men's or women's?

A. Three men's coats, one was a black leather jacket and another was a regular length winter coat in a light color and the other one was the same color, and the other fur coat was my grandmother's.

Q. And what color was that fur coat?

A. It was brown . . ..

N.T. at 11.

Mrs. Monaco also noted that appellant's shoes were lying on the grass outside a window from which the storm protection had been removed, and that the front door of the house was open.

 This evidence was sufficient to show beyond a reasonable doubt that appellant had committed the crime of theft. The elements of theft are: (1) unlawful taking of or exercising unlawful control over (2) movable property of another (3) with intent to deprive him thereof.[4] The evidence that appellant was seen leaving her father's house through the window and while he was in the Cleveland Clinic, wearing a coat that did not belong to her, was sufficient to prove that she was exercising control of another person's movable property without his permission. *See, e. g., Commonwealth v. Lindie*, 147 Pa.Super. 335, 24 A.2d 39 (1942). Proof of intent to deprive that person of the property is more difficult. However, like all elements of a crime, intent may be proved by circumstantial evidence, *Commonwealth v. Gibson*, 201 Pa.Super. 573, 578, 193 A.2d 690, 692 (1963), provided the conviction does not rest on mere suspicion or conjecture, *Commonwealth v. Cinchy*, 227 Pa.Super. 480, 482–483, 323 A.2d 817, 818 (1974). We think the circumstances here, in particular the furtive, very late entry and exit, and the fact that other movable property of value was missing, warrant the inference that appellant intended to deprive the owner of the long brown fur coat. To infer that she was merely borrowing the coat might be reasonable if the incident had occurred in winter, but it occurred in August.

### 3

Appellant has made several other arguments, but these require little discussion.

 First, appellant argues that the lower court erred in placing her in the Waynesburg Youth Development Center. This claim is moot, for the docket discloses the following Order of Court:

And now, this 31st day of December, 1975, upon consideration of the foregoing Petition of Lawrence County Child Welfare Services, it is hereby Ordered, Adjudged

4. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, effective June 6, 1973, 18 Pa.C.S. § 3921(a).

and Decreed that Rhonda DelSignore be and hereby is released from the Youth Development Center at Waynesburg and also from the custody and control of Lawrence County Child Welfare Services and further Lawrence County Child Welfare Services is hereby directed to close the file on this case.

■■■ Second, appellant argues that the lower court did not have jurisdiction to hold an adjudication hearing on September 8, 1975, because more than ten days had passed since the petition was filed against appellant. Appellant cites 11 P.S. § 50–315, which provides in pertinent part:

(a) After the petition has been filed the court shall fix a time for hearing thereon, which, if the child is in detention, shall not be later than ten days after the filing of the petition. If hearing is not held within such time, the child shall be immediately released from detention.

We agree with appellee that "[t]he obvious purpose of the statute is to prevent pre-hearing detention, and is apparent from the requirement of detention release if the hearing is not held within ten days." Appellee's Brief at 4. Here, appellant was released from detention on the tenth day after the petition was filed; thus the statute was complied with, and the harm it was designed to prevent—lengthy pre-hearing detention—was prevented. *See Commonwealth ex rel. Watson v. Montone*, 227 Pa.Super. 541, 323 A.2d 763 (1974) (by implication).

■■■ Third, appellant argues that she was denied various constitutional rights. However, counsel raised no objection below on these grounds; therefore the claims have been waived. *Commonwealth v. Clair, supra; Dilliplaine v. Lehigh Valley Trust Co., supra.*

■■■ Fourth, appellant argues that the lower court should have granted her motion to dismiss on the ground of res judicata. A previous petition, alleging both deprivation and delinquency, had been filed on January 16, 1975, and resulted, by stipulation of the parties, in an adjudication of deprivation entered on February 11. However, the present

petition and hearing were based on acts committed after the first adjudication. Therefore, at least two of four factors requisite to the application of the doctrine of res judicata are lacking: identity of the thing sued upon, and identity of the cause of action. *See Callery v. Municipal Authority of Township of Blythe,* 432 Pa. 307, 243 A.2d 385 (1968).

Order affirmed.

PRICE and VAN der VOORT, JJ., concur in the result.