378 A.2d 995

**In the Interest of Candy KILIANEK, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 10, 1976.

Decided Oct. 6, 1977.

Robin Russel Vandercoy, Erie, for appellant.

Dana Sherwood Jones, Erie, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On November 21, 1975, a Petition of Delinquency was filed charging that appellant, Candy Kilianek, had committed the offense of "incorrigibility." The petition listed seven instances between July 29, 1974, and October 24, 1975, when Candy ran away, and also enumerated as specific acts of disobedience the following: failure to attend school on a regular basis; being a disruptive force at Harmony House, at the Children's Service Shelter, and at home; and failure to abide by the reasonable and lawful commands of her parents and custodians.

On January 28, 1976, an evidentiary hearing was begun before a master; the hearing was completed on April 6, 1976. On April 28 Candy was adjudicated a delinquent child

and ordered placed for an indefinite period in Gannondale School for Girls. On July 29 Candy was removed from Gannondale and placed in Edmund L. Thomas Hall Juvenile Detention Center. On August 23, after a replacement hearing, she was transferred to the Youth Development Center at Waynesburg.

This appeal challenges both the adjudication of delinquency (No. 792 April Term 1976) and the placement order (No. 23 April Term 1977). We reverse the adjudication of delinquency and therefore do not consider the placement order.*

## I

■■■ The Petition of Delinquency filed on November 21, 1975, was accompanied by allegations of "incorrigibility." We accept the Commonwealth's argument that these allegations gave sufficient notice that Candy was charged with being ungovernable. See In re Garner, 230 Pa.Super. 476, 326 A.2d 581 (1974). Therefore, to be adjudicated delinquent, Candy had to be shown to have committed a delinquent act under subsection (2)(ii) of section 50–102 of the Juvenile Act, Act of December 6, 1972, P.L. 1464, No. 333, § 2, 11 P.S. § 50–102 (Supp.1976), which reads in pertinent part:

(2) "Delinquent act" means: . . . (ii) a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian, or other custodian committed by a child who is ungovernable. . . .

As we read this definition, it sets forth two requirements that must be satisfied before there may be a finding of a delinquent act: first, it must be shown that the child has committed "a specific act or acts of habitual disobedience"; and second, it must be shown that the child "is ungovernable."

* We are advised that while this appeal was pending Candy was granted a release hearing, and on December 16, 1976, was released from the Youth Development Center to her parents. This action, however, does not moot the appeal from the adjudication of delinquency, for there is no indication that the adjudication has been altered. Indeed, while appeal was pending it would appear that no such alteration could be made. See Pa.R.A.P. 1701.

The Commonwealth asserts that it is not necessary to show that a child is at present—*i.e.* at the time of the adjudication hearing—ungovernable. The Commonwealth argues:

> . . . The appellant would have us believe that once she commits an act of delinquency, the mere passage of time will exonerate her from any accountability or liability for such act. Nothing can be further from the truth. Had the Appellant committed an act designated a crime under the criminal code, she would, under her argument, say, "Yes, I committed a crime six months ago, but because I haven't committed another one since that time, I should not be subject to the jurisdiction of this Juvenile Court." To adopt this argument as a rule would completely frustrate the purposes of the Juvenile Act.

> This section of the Juvenile Act, while [*sic*] plain and unambiguous, does not require a finding of *present* ungovernability. Rather, this section requires proof of "a specific act or acts of habitual disobedience * * * of a child who is ungovernable;" and this is exactly what was proven.

Appellee's Brief at 9.

This argument suggests, either that it is not necessary to show that a child is *ungovernable*—that quality being proved merely by proof of disobedience—or that it is not necessary to show that a child *is* ungovernable—the implication being, once ungovernable, always ungovernable.

The Commonwealth's first suggestion renders the words "who is ungovernable" mere surplusage. By statute, such an interpretation is not favored. The Statutory Construction Act provides:

> In ascertaining the intention of the Legislature in the enactment of a law; the courts may be guided by the following presumptions among others:
>
> .　　.　　.　　.　　.
>
> (2) That the Legislature intends the entire statute to be effective and certain; . . .

Act of May 28, 1937, P.L. 1019, art. IV, § 52; 46 P.S. § 552. We encounter no difficulty in concluding that the Legislature intended to require proof of both "habitual disobedience" and "ungovernab[ility]". A child who is habitually disobedient is not necessarily ungovernable. Suppose, for example, a child who habitually disobeys his parents' "reasonable and lawful commands" to be at home by a given time, but who explains his disobedience by saying, "My parents never punish me, so why should I obey them?" The child is not ungovernable, but ungoverned. He may well be a deprived child in that he "is without proper parental care or control," 11 Pa.C.S. § 50–102(4)(i); but he is not a delinquent child.

The Commonwealth's second suggestion likewise misses the point of the ungovernability classification. Suppose a child shown to be ungovernable at the age of ten in 1970, but, when a hearing is held in 1976, governable. "Ungovernability" is not an act (or series of acts) but a condition. It is true, as the Commonwealth argues, that in a historical sense, the "passage of time" will not undo the child's acts of disobedience; however, it may alter his ungovernable condition. Under our reading of Section 50–102(2)(ii), the passage of six years, together with a showing that during that period the child's condition has improved, may lead a factfinder to conclude that in 1976 the child "is" not ungovernable and therefore "is" not delinquent. Granted, by supposing six years we have stated an easy case, but the principle is the same, whether the period be six years or, as here, six months.

## II

Before October 26, 1975, Candy Kilianek's history was troubled. She ran away from her parents' home five times, from foster homes three times, and from temporary placements seven times. There was evidence that she would not obey authority—whether that of her parents, foster parents, school officials, or staff members at the shelter homes where she was placed. This evidence was sufficient to support a

finding of ungovernability. In *In re Garner, supra,* we sustained a finding of ungovernability on similar evidence.

However, from October 26, 1975, when she was placed with new foster parents, the Holdsons, until April 6, 1976, Candy showed a considerable improvement. Given that improvement, we might reverse an adjudication of delinquency based on a finding of ungovernability, on the ground that the Commonwealth had not established the statutory requirement of showing that Candy "is ungovernable." However, we need not decide that now, for here, by our reading of the record, there has been no finding that Candy is ungovernable.

As mentioned above, the Petition of Delinquency was filed on November 21, 1975. A master was appointed by the court to hear evidence on the allegations of the petition, as is permitted by Section 50–301 of the Act. After two hearings, on January 28 and April 6, 1976, the master submitted findings of fact, and the following "Conclusions of Law":

> The Master feels that the evidence is sufficient to show beyond a reasonable doubt that the juvenile was incorrigible because of all the testimony that was given against her at the hearing, and which wasn't refuted by her, and that she was incorrigible up until October 26, 1975, based on the various charges against her, as per the attached sheet, but since October 26, 1975, which was the time that she has been at the Holdson residence she had not been incorrigible.

The master made the following "Recommendation":

> The allegation of incorrigibility is sustained and it is the Master's recommendation that since October 26, 1976 [*sic* —should read "1975"] until the present date the juvenile has not been incorrigible.

The court thereupon entered the following order:

> AND NOW, April 6, 1976, after hearing before the Master and upon his recommendation, it is thus ORDERED and DECREED that the following allegation be sustained: Allegation # 3, (Incorrigibility), and the matter is continued until further order of the Court.

By entering this order the court adopted the master's findings and recommendation as those of the court: the Act provides that "[u]nless a rehearing is ordered, the findings and recommendations [of the master] become the findings and order of the court when confirmed in writing by the judge." 11 P.S. § 50–301(d). Therefore, whether or not the court recognized the significance of its order, as a matter of law when it entered the order it declared that as of April 6, 1976, Candy was not ungovernable. Consequently, she could not be adjudicated delinquent. Nevertheless, on April 28, 1976, the court conducted a dispositional hearing, and did adjudicate her delinquent, directing that she be placed in Gannondale School for Girls—a disposition under section 50–322(3) of the Act ("Disposition of delinquent child"). This adjudication and this disposition were in contravention of the court's own order of April 6, and must be reversed.

### III

Notwithstanding the above, we think we know why the court took the action it did on April 28. At the opening of the dispositional hearing, Mrs. Holdson, Candy's foster mother at that time, informed the court that her family had decided that they could no longer keep Candy, who was having problems in school and with the Holdson family. Given that turn of events, the court could have reasonably wondered whether, despite the master's recommendation, Candy was now ungovernable, and whether, therefore, the court's order of April 6 was no longer accurate. So wondering, the court might have decided to order a rehearing, which a court may do "at any time upon cause shown." 11 P.S. § 50–301(d).

However this may be, the court did not order a rehearing, and without one, it was without power to alter its order of April 6. "*Unless a rehearing is ordered*, the findings and recommendations [of the master] become the findings and order of the court when confirmed in writing by the judge." 11 P.S. 50–301(d) (emphasis added).

It might be suggested that the April 28 hearing was a rehearing. If it is viewed as such, the adjudication should still be reversed, since on this "rehearing" Candy was not afforded the due process required by *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Specifically, Candy was not given "notice . . . sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare [would] be afforded . . . ." *Id.* at 33, 87 S.Ct. at 1446. When she appeared with her attorney at the April 28 hearing, she was entitled to rely on the court's order of April 6 that she was not ungovernable, and therefore not delinquent.

Reversed.

PRICE, J., concurs in the result.

CERCONE, J., files a concurring opinion in which WATKINS, President Judge, joins.

VAN der VOORT, J., dissents.

CERCONE, Judge, concurring:

I concur in the majority's holding that because there was no finding of ungovernability by the master the court could not adjudicate Candy delinquent unless a rehearing is ordered. 11 P.S. § 50–301(d). I also agree with the majority's decision that a finding that a child is currently ungovernable is a prerequisite to an adjudication of delinquency. However, I disagree with the implication in the majority's opinion that if a child is ungovernable for an extended period of time and then behaves in a governable manner for a period of time immediately preceding the delinquency hearing, a finding of ungovernability is precluded. The fact that an established chronic pattern of ungovernability has recently abated should not, *ipso facto*, preclude a court from determining that a child "is ungovernable" within the meaning of Section 50–102 of the Juvenile Act. A better procedure

would be to continue the hearing so that it could be determined whether the normal behavior will continue.

WATKINS, President Judge, joins in this concurring opinion.