419 A.2d 508

**In the Interest of K. B., a minor.**

**Appeal of K. P., natural mother.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed March 21, 1980.

382

William J. Fries, Butler, for appellant.

Gwilym A. Price, III, Butler, for appellee.

Robert F. Hawk, Assistant District Attorney, Butler, for Commonwealth.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

384

SPAETH, Judge:

■ This appeal arises from an order granting custody of appellant's daughter to the Butler County Children and Youth Agency.[1]

1. Appellant claims to be appealing from three orders of the court below: an order adjudicating her daughter dependent; a second order granting custody of her daughter to the Butler County Children and Youth Services; and a third order denying appellant's motion for a rehearing. She has filed two separate appeals, which have been consolidated. The first appeal, filed May 7, 1979, is purportedly taken from the adjudicatory and dispositional orders. The second appeal, filed June 6, 1979, is taken from the order denying a rehearing.

Appellant cannot appeal from the order adjudicating her daughter dependent, as that order is interlocutory. In re C.A.M., 264 Pa.Super. 300, 399 A.2d 786 (1979). Also, serious question exists concerning appellant's ability to appeal from the order denying a rehearing. Although a former statute guaranteed the right to a rehearing on a final order placing a dependent child whenever a change in circumstances took place which in the opinion of the child's parent warranted the revocation or modification of the final order, the Juvenile Court Law, Act of June 2, 1933, P.L. 1433, § 16, as amended, 11 P.S. § 258, this statute was repealed by the Juvenile Act, Act of Dec. 6, 1972, P.L. 1464, No. 333, § 40, 11 P.S. §§ 50–101 et seq. (The Juvenile Act has itself been repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1460], 42 P.S. § 20002, and substantially reenacted as 42 Pa.C.S.A. §§ 6301 et seq.) The present Juvenile Act does not explicitly guarantee a right to a rehearing on a final order placing a dependent child. The Act does allow for a rehearing before a judge in cases, such as the present one, where the dependency hearing is initially held before a master, 42 Pa.C.S.A. § 6305(d) (1979 Pamphlet), but an order denying a rehearing before a judge does not end the litigation or dispose of the entire case. In re C.A.M., supra. Nor would an appeal lie if we were to consider appellant's motion for a rehearing as being made pursuant to Pa.R.A.P. 1701(b)(3). Fingles v. Green, 269 Pa.Super. 131, 409 A.2d 99 (1979); Provident National Bank v. Rooklin, 250 Pa.Super. 194, 378 A.2d 893 (1977).

Appellant, however, could and did file a timely appeal from the lower court's dispositional order. That appeal preserves all issues arising from both the adjudicatory and dispositional proceedings. In re C.A.M., supra. Moreover, appellant's argument that the lower court abused its discretion by not granting her motion for rehearing may be considered without deciding whether appellant could appeal from the order denying rehearing, because when considered, it is found to be without merit since appellant did not state in her motion that if a rehearing were granted, she would present evidence not already presented.

It should be noted that the lower court not only adjudicated appellant's daughter dependent, but also her son. On this appeal, however, appellant seeks only her daughter's return. Appellant

On March 26, 1979, Nancy Keffalas, a caseworker for the Butler County Children and Youth Agency, filed a petition alleging that within the prior year appellant's eight year old daughter had been sexually abused by her stepfather–appellant's husband–and that as a result the daughter was an abused and dependent child without proper parental care or control necessary for her physical, mental or emotional health or morals. See The Juvenile Act, 42 Pa.C.S.A. §§ 6301 *et seq.* (1979 Pamphlet); The Child Protective Services Law, 11 P.S. §§ 2201 *et seq.* (1979–80 Supp.). On April 6, 1979, an adjudicatory hearing was held before a master at which the following evidence was adduced.

Appellant's eleven year old son testified to several incidents of sexual abuse, as follows. When appellant was out of the house his stepfather had sodomized him and his sister, and had forced them to have intercourse with each other. His stepfather warned him that if he told appellant about the incidents, he would be spanked. He did not tell appellant, but when he "couldn't stand it any longer," did tell his natural father and the authorities. His stepfather also showed him nude photographs of appellant. At the hearing the Commonwealth introduced three photographs, two of which the son identified as ones the stepfather had shown him. The son also testified that on one occasion his sister tried to get into his bed without clothes but was discovered by appellant, who became angry. The son said he loved his stepfather but understood that he was sworn to tell what actually occurred.

Police Sergeant Dalcamo testified that appellant's son told him that within the previous year appellant's husband had sodomized him and his sister, and had shown him nude photographs of appellant in a bed. Acting on information from appellant's son, Sergeant Dalcamo obtained a search warrant. In executing the warrant, he found the photo-

testified at the hearing below that she did not want custody of her son because she could not control him.

Finally, it should be noted that appellant's daughter has been represented by separate counsel during the proceedings below and on appeal.

graphs introduced at the hearing, and also had occasion to observe the condition of appellant's home. He said the home was a general mess, with clothes scattered about and dishes piled high in the sink, but that appellant's daughter was dressed decently.

Appellant testified that she had been married to her present husband for a year. It was her third marriage; her children resulted from her first marriage. Appellant said that she left her children alone with their stepfather when she went to play bingo or went to the hospital for medication to relieve bad headaches. Although she said that she went to the hospital only "a couple times," she also said that she had headaches "quite a bit." In any event, according to appellant never did any member of her family report to her any incident of sexual abuse by her husband, nor did she ever discover marks or vaginal irritation on her daughter, whom she bathed daily. One night, after sending her children to bed, she did hear noises that prompted her to go to her daughter's bedroom. There she discovered her daughter and her son, who had left his bedroom. She said that when she appeared, the children "jumped out of the bed and starting zipping their pants up  .  .  .." Upon inquiry, both denied that they had been doing anything, whereupon she spanked them and put them both back to bed. She said that she did not investigate the incident further since she wanted to believe the children. Appellant admitted that she had allowed her husband to take four nude photographs of her, for their personal use, and that she kept them, even though her husband wanted them destroyed, until they disappeared from her possession. Appellant described her home as a "very small" two bedroom residence. She said that her son had been in his father's custody and had been living in her home for only four weeks before the dependency petition was filed, and that for at least part of this four week period, the son's father had also been living there, in addition to herself, her present husband, and the children. Finally, appellant stated that if her present husband were released from jail, where at the time of the hearing he was

incarcerated pending trial on charges of sexually abusing appellant's children, she would resume living with him.

Nancy Keffalas, the caseworker who filed the dependency petition, testified, over the objection of appellant's counsel, that school records showed that appellant's daughter had moved ten times within the two and a half year period between September 1976 and February 1979. During the 1976–77 school year,[2] her daughter missed thirty–three of one hundred twenty–two school days. On the day before the adjudicatory hearing, Mrs. Keffalas visited appellant's home and observed a "rather cluttered," "quite cramped" residence. On an earlier visit, she observed an unmade bed, "a lot of stuff on the center of the floor," a pile of what appeared to be dirty laundry beside a wall, dishes piled in the kitchen, and a house that "was just rather disheveled and messy." Mrs. Keffalas also testified that within several days of March 22, after appellant's daughter had been removed from appellant's home and temporarily placed in a foster home, a vaginal rash was detected on the daughter. The rash cleared up, apparently without medical treatment. An internal examination of the daughter had not been made because of the daughter's resistance. A partial external examination of her, however, had been made.

Eric Timko, who became the foster parent of appellant's daughter after she was removed from appellant's home on March 22, testified that he had not spoken with the daughter concerning incidents of sexual abuse. He testified that one evening, however, when he was tucking the daughter in bed, she jumped up and said, "What are you doing?" The next morning, the daughter told her foster mother that "Dad scared me last night . . .. He pulled the covers back . . .."

Appellant's daughter did not testify at the hearing, but a stipulation was entered that had she been called, she would

2. This may be a mistake. Testimony at the dispositional hearing indicates that Mrs. Keffalas may have meant to say that appellant's daughter missed thirty–three days during the 1978–79 school year. See Text *infra*.

have denied all incidents of sexual abuse and would have said that she wanted to return to her mother.

The master found that appellant's daughter was dependent and abused "in that the evidence presented indicates that [she was] involved in sexual intercourse and unnatural sex acts." The lower court, without taking additional evidence, adopted the master's findings, adjudicated the daughter dependent, and ordered a dispositional hearing to be held within twenty days. On April 26, a dispositional hearing was held before the master at which a caseworker for the Child Abuse Division of the Children and Youth Agency of Butler County recommended that appellant's daughter be placed in foster care, giving the following reasons. Both of appellant's children had previously been in the care of child protective agencies in California and in adjoining Armstrong County. During the school year prior to the incidents of sexual abuse, appellant's daughter had missed approximately thirty–three of one hundred twenty–two school days; most of her absences were unexcused. Also, a psychiatric evaluation of the daughter showed that she needed to be placed in a structured environment with established guidelines and constant monitoring in order to counteract a hyperkinetic syndrome to which the daughter was susceptible. Appellant's home did not provide a structured environment; indeed, her home was such as to promote the syndrome. In addition, the daughter needed regular doses of medication. The caseworker admitted, however, that special training was not needed to treat the syndrome. A social summary was introduced into evidence, as well as a psychological evaluation and psychiatric and physical examination reports on the daughter.[3]

Appellant testified that she had been living at her present address in Butler County for several months; that she had seen her daughter once since the adjudicatory hearing and had tried to make contact with Children's Services several times; that she thought her daughter "was doing pretty

3. The summary, evaluation, and reports have not been included in the record on this appeal.

well going to school" and did not believe her daughter had missed thirty–three school days; and that she never had contact with children welfare agencies in either California or Armstrong County. She reaffirmed that were her present husband released from jail, she would resume living with him. In this regard, she said, "He'll never be alone with the girl anymore; " but then she added, "I don't believe it really happened [h]e's never been alone with her." Appellant stated that she was willing to participate in counseling established by Children's Services, and that if her daughter were returned to her, she would allow the agency frequent access to her house.

On this evidence the master recommended that appellant's daughter be placed in a foster home until further order of the court; that the daughter attend counseling until released by the Butler County Children and Youth Agency; that appellant and her first husband also attend counseling; that a reasonable visitation structure be established; that a firm plan to return the daughter to her parents be established within thirty days by the Children and Youth Agency; that appellant and her first husband meet with the Domestic Relations Director to establish a care and maintenance agreement while the daughter was in foster care; and that the case be reviewed prior to the 1979–80 school year. The master believed that these recommendations were in the best interests of appellant's daughter. The lower court, without taking additional evidence, explicitly adopted all of the master's findings and recommendations, except the recommendation that a firm plan to return the daughter to her parents be established within thirty days.

Following the entry of the court's order, appellant moved for a rehearing on the dependency petition, citing the dismissal of the criminal charges against her present husband alleging sexual abuse of her children. On May 7, 1979, the lower court denied the motion.

In reviewing this record, it will be convenient to consider, first, the propriety of the order adjudicating appellant's daughter dependent, and second, the propriety of the dispo-

sitional order directing, among other things, that the daughter be placed in a foster home.

1

■ Appellant argues that the Commonwealth failed to prove by clear and convincing evidence that her daughter was dependent. The Commonwealth's evidence of sexual misconduct committed by her husband, appellant claims, did not show that her daughter was dependent because such evidence did not show that appellant knew or should have known of her husband's actions.

■ In making this argument, appellant confuses criminal and tort law, where the state of mind of the defendant is often central to the inquiry, with the principles that obtain in a dependency proceeding. The Juvenile Act defines a dependent child as one who "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. . . . " 42 Pa.C.S.A. § 6302 (1979 Pamphlet).[4] In determining whether a child is dependent, the court must ascertain (1) what sort of parental care the child has received in the past, and (2) what sort of parental care the child will receive if her parent is given custody. *In re Clouse*, 244 Pa.Super. 396, 397, 368 A.2d 780, 782 (1976). *See also In re Pernishek*, 268 Pa.Super. 447, 408 A.2d 872 (1979); *In re LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976). It is clear that this inquiry must focus on whether *in fact* a child has received, or will receive, proper and necessary parental care; whether the child's parent *thinks*, reasonably or unreasonably, that such care has been, or will be, provided is relevant only insofar as it shows the parent's ability and willingness to provide care. Thus, where harm has befallen a child without the parent's knowledge, this court has held that the child may nevertheless be adjudicated dependent if the parent is unable to care for the special needs of the child caused by the harm. *See In re Pernishek, supra* (child dependent even though no proof that

4. The Juvenile Act also provides eight other definitions of "dependent child," none of which, however, is applicable here.

parents knew that child suffered from psychological malfunction); *In re Whittle,* 263 Pa.Super. 312, 397 A.2d 1225 (1979) (daughter dependent because mother unable to treat burns caused when mother's son ran scalding water on daughter without mother's knowledge); *cf. In re DeSavage,* 241 Pa.Super. 174, 360 A.2d 237 (1976) (child deprived even though never in parents' custody).

In the present case, the Commonwealth's evidence showed that appellant's husband had sexually abused her daughter.[5] Whether appellant suspected prior to her husband's arrest that he had been abusing her children is not crucial; what is crucial is that by the time of the adjudicatory hearing appellant was aware of the charges, but nevertheless testified that if her husband were released from jail, she would resume living with him. This testimony, together with the evidence of abuse by her husband, showed clearly and convincingly her daughter's dependency; for by stating that she would voluntarily expose her daughter to the man who had previously assaulted her sexually, appellant showed her unwillingness to provide her daughter with proper parental care by taking precautions to prevent further assault. *Contrast In re Rodriguez,* 267 Pa.Super. 131, 406 A.2d 553 (1979) (infants sexually assaulted by mother's fourteen year old half–brother when left alone with him once for brief period; mother promptly takes infants from half–brother's household; held, infants not dependent). Appellant's testimony

5. Appellant does not argue that the testimony of her son, who was the Commonwealth's key witness concerning sexual abuse by the stepfather, was incredible and should have been discounted by the lower court. However, since the matter implicates our ability to review matters that appellant has raised on appeal, it may be noted that the master's report is somewhat informal, being in narrative form, and that the lower court has not provided us with a comprehensive and detailed explanation of its order adjudicating appellant's daughter dependent. *E. g., In re LaRue, supra; In re Clouse, supra; In re Kunkel,* 265 Pa.Super. 605, 402 A.2d 1037 (1979) (SPAETH, J., concurring and dissenting). Nevertheless, the record is sufficiently complete to permit us to identify the evidence that the master and lower court found credible, and to fulfill our responsibility of conducting an independent review of the merits of the case. Thus, a remand for specific findings of fact and an opinion is unnecessary. *See In re Pernishek, supra.*

also gives cause for concern regarding her ability to care for the emotional scars her daughter has already suffered from the stepfather's prior attacks.[6]

Appellant also argues that the lower court could not find her daughter dependent because the stepfather, "the person who had been responsible for the acts recited in the dependency petition," was incarcerated at the time. This argument fails to address one of the two concerns just mentioned—appellant's ability to care for the emotional scars her daughter has already suffered. It also ignores the temporary nature of the stepfather's incarceration. At the time of the adjudicatory hearing, the stepfather was awaiting trial on the charges of having sexually abused the children. As noted above, in determining whether appellant's daughter was dependent, the lower court was required to consider the sort of parental care she would receive if returned to appellant. The lower court therefore had to consider the possibility that the stepfather would be released from jail, for example, upon posting bail, and that upon his release he would resume living with appellant and her children.

■ Appellant also argues that the master and the lower court improperly considered the messy condition of her home. Assuming, without deciding, that evidence concerning the condition of appellant's home was improperly admitted at the adjudicatory hearing because appellant was not given adequate notice in the dependency petition that her abilities as a homemaker would be an issue at the hearing, cf. In re DelSignore, 249 Pa.Super. 149, 375 A.2d 803 (1977); In re Sharpe, 248 Pa.Super. 74, 81, 374 A.2d 1323, 1326 (1977) (SPAETH, J., concurring and dissenting), and further assuming that appellant has not waived her argument by failing to make timely objection to the introduction of the evidence at the hearing, the record nevertheless shows that the master and lower court found appellant's daughter to be

6. Appellant's statement at the dispositional hearing that she did not believe that the attacks had occurred may explain her willingness to return to her husband. This disbelief, however, may prevent appellant from providing the degree of understanding and sympathy her daughter needs.

dependent not because appellant's home was messy, but because her daughter had been sexually abused.

## 2

In making his recommendation to the lower court, the master stated that it was *"in the best interests* of the [daughter] to be placed in foster care with counseling to be participated in by the parents and that reasonable visitation be established and a firm plan to return the children to be established." (Emphasis added.) Appellant argues that this was an incorrect standard of proof, and that the dispositional order must therefore be set aside.

■ The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. *E.g., In re Pernishek, supra; In re Whittle, supra;* 42 Pa.C.S.A. § 6301(b)(3) (1979 Pamphlet). In addition, this court had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible. *In re Pernishek, supra; In re Whittle, supra.*

At the time of the dispositional hearing, appellant's husband was incarcerated. Although, as just discussed, the fact of his incarceration could not be controlling on the issue of the dependency of appellant's daughter, it assumed greater importance during the dispositional phase of the proceedings. Neither appellant nor anyone else could expose the daughter to appellant's husband while he was in jail. Consequently, if there was to be a showing of clear necessity to remove the daughter from appellant's custody, so long as her husband was in jail the showing had to be based on some evidence other than evidence of his sexual abuse of the daughter.

■ The record, however, discloses no such other evidence. The caseworker who testified for the Commonwealth stated that the daughter was susceptible to hyperkinetic syndrome;

that as a result, she needed medication and a stable environment; and that appellant's home was unstable. The caseworker also testified, however, that special training was unnecessary to treat the syndrome, and when asked whether the daughter's syndrome could be treated in appellant's home with continuous supervision by Children's Services, she replied that she had "no way of an indication from surveying here the family background and present social conditions leading up to this event of sexual abuse that there's enough stability in [appellant's] home to prompt monitoring of the child's behavior." Thus, the caseworker did not say that alternative services that would allow the daughter to remain with appellant had been explored and rejected because they were unfeasible. Her testimony was therefore insufficient to support the Commonwealth's burden of proving that clear necessity existed requiring the daughter's removal. *In re Pernishek, supra; In re LaRue, supra.*

■■■ The Commonwealth's failure to prove at the dispositional hearing that the daughter's removal from appellant's custody was clearly necessary, however, does not automatically entitle appellant to relief. We need not blind ourselves to representations in the record and in the parties' briefs that subsequent to the dispositional hearing the district attorney nol pros'd the criminal charges against appellant's husband[7] and that he has been freed. *In re DeSavage,*

7. It might be argued that because the district attorney nol pros'd the criminal charges against appellant's husband, we should view the record as though it showed that appellant's husband had not sexually abused the children. To take such a view of the record, however, would be a mistake. Despite the nol pros, the fact remains that appellant's son testified that appellant's husband had sexually abused him and his sister, and that the master believed this testimony. In a proceeding involving the custody of a child, the scope of our review is broad. *In re Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977); *In re Clouse, supra; Clair Appeal*, 219 Pa.Super. 436, 281 A.2d 726 (1971). However, on issues of credibility, we must necessarily defer to the finder of fact, who has seen the witnesses. *Id.* Consequently, so far as this proceeding is concerned, we must view the record as showing sexual abuse, even while recognizing that so far as the criminal law is concerned, appellant's husband is no longer charged with such abuse, and even when so charged, was presumably innocent of committing it.

*supra.* Given these representations, and given appellant's testimony during the hearings below that she would resume living with her husband if he were released, an order by this court vacating the lower court's dispositional order would be inappropriate. We should not permit the return of the daughter to the household where she was abused without satisfactory proof that the abuse will not be repeated. *Cf. Commonwealth ex rel. Slater v. Slater*, 269 Pa.Super. 496, 410 A.2d 365 (1979) (custody of son not awarded to mother because stepfather with whom she lived had abused son's siblings). To avoid this result, we shall remand for a further hearing at which the lower court could decide upon a disposition that would be consistent with the principles discussed in this opinion and would reflect the present state of affairs.

The order adjudicating appellant's daughter dependent is affirmed, and the case remanded for further hearing.

HOFFMAN, J., files a concurring statement.

VAN der VOORT, J., files a dissenting opinion.

HOFFMAN, Judge, concurring:

Because of the lapse of time and the change in conditions since the determination of custody, I agree that we must remand for a hearing to determine whether the child should remain in the custody of the county agency or be returned to her mother's home. I therefore concur in the result of Judge Spaeth's opinion.

VAN der VOORT, Judge, dissenting:

This is an appeal from three orders of the lower court, the first adjudicating appellant's two children dependent; the second awarding custody of the children to the Butler County Children and Youth Agency (hereinafter the Agency); and the third denying rehearing.

The facts are briefly as follows: On March 22, 1979, Katherine, age eight and William, age eleven, the natural children of appellant Katherine P. were taken from their home by the Agency and placed in foster homes. Simulta-

neously appellant's husband, the children's step–father, was arrested and charged with contributing to the delinquency of a minor, rape, involuntary deviate sexual intercourse and statutory rape, of one or the other of them. The Agency then filed a dependency petition and pursuant to 42 Pa.C. S.A. § 6332 an informal hearing was held on March 26, 1979, at which time it was decided that the children should be detained until a formal hearing on the petition could be held. The petition alleged that the step–father had committed various acts of deviate sexual intercourse with both children, and that they were therefore dependent and abused.

A hearing on this petition was held before Juvenile Court Master Thomas M. Kiermaier on April 6, 1979. At this time the 11 year old boy accused his step–father of having had sex with both children on numerous occasions over a period of time.

At this time the court adjudicated the children dependent and ordered that psychiatric, physical and psychological examinations be prepared and submitted at a disposition hearing, which was set for April 26, 1979. Temporary custody was awarded to the Agency.

The final hearing in this sequence took place on April 26, 1979, all before Master Kiermaier, at which time an opinion was submitted, and adopted by the court, stating:

"The recommendations indicate that it is in the best interest of the juveniles to be placed in foster care with counseling to be participated in by the parents and that reasonable visitation be established and a firm plan to return the children to be established."

This conclusion was based on evidence that the children were prone to erratic, hyperkenetic behavior, and needed a structured environment which the mother's home did not provide, as well as the evidence of abuse.

Subsequent to this hearing, the District Attorney for Butler County entered a nolle prosequi on the charges against the step–father, based on the results of a polygraph test.

Appellant then moved for rehearing and an order was issued on May 7, 1979, denying such motion.

Appellant now appeals the decisions contained in the lower court orders, as relating to her daughter only, of April 6, 1979, April 26, 1979, and May 7, 1979.

Appellant contends that the finding of dependency was improper because there was no showing that the appellant was incapable of providing proper care for her daughter, in terms of protecting her from the step–father, once she had been put on notice of the alleged abuse, and that the law requires a present tense finding of dependency.

The applicable section of the Juvenile Act, 42 Pa.C.S.A. § 6302 (1978) reads,

*"Dependent Child"* A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals   .    .    .

Appellant testified that she was unaware of any alleged incidents of sexual abuse until her husband was arrested. It is her contention that she presently is capable of providing proper care for her daughter in that she would in the future take steps to insure that her husband would not be left alone with her daughter.

I am unpersuaded by this argument. As a step–parent living in the same residence it is highly unlikely that the mother's efforts to keep her husband away from her daughter at all times would prove successful. She in fact testified that she frequently suffers from severe headaches which require her to go to a hospital for injections, and that at such times she left her husband alone with the children.

Appellant's other contention regarding the dependency finding is that it was improper for the court to hear evidence of sexual abuse by the step–father without first proving that the mother was aware of such activity. Appellant argues that it is unfair to make a "finding of dependency against her," where she cannot be shown to have been

aware of the pertinent acts of abuse. I would remind appellant however that one purpose of the Juvenile Act is to protect the welfare of the children, (42 Pa.C.S.A. § 6301(b)(3)). As a common sense matter the enforcement mechanism of the Act would be severely emasculated if proof were required in all abuse cases of the complicity of both parents.

I agree with appellant, however, that the lower court erred by applying the wrong standard in determining whether the daughter should be returned to her mother, and I further find that application of the correct standard would not require removing the child from her mother, hence I would reverse the lower court order of April 26, 1979.

The lower court granted custody of the daughter to foster care on the basis of the Master's finding that such was "in the best interest" of the child. In so doing the court has violated the well established rule that a child may not be taken from his parents except upon proof of "clear necessity." *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974); *Matter of DeSavage*, 241 Pa.Super. 174, 360 A.2d 237 (1976).

A finding of dependency does not mandate removing the juvenile from the home. This Court affirmed a finding of dependency in *In the Interest of Whittle*, 263 Pa.Super. 312, 397 A.2d 1225 (1979) where appellant's infant daughter had received first, second and third degree burns in the bath tub, that required special convalescent care. The Court found that appellant could, with the help of the local Child Welfare Service, learn the techniques necessary to prevent the serious complications which might result if proper care was not provided. The Court reversed the custody order to return the child to appellant and fashioned an Order requiring Child Welfare Service to provide appellant with in–home training and supervision to insure the welfare of the daughter.

I feel from a careful review of the Master's findings as well as the notes of testimony that there is no clear necessity for the child to be removed from her mother's home at this

time.  Appellant has evidenced a willingness to cooperate with the Agency and to allow them to monitor her home.  In addition she has agreed to participate in counselling and to endeavor to remedy the defects in her home which may have contributed to the daughter's hyperkenetic behavior.  In as much as the allegations of sexual abuse cannot be proven, and in light of the mutual desire of mother and daughter to be reunited I feel the best course of action is to reverse the award of custody.

Appellant's final contention is that the lower court's denial of appellant's Motion for Rehearing was an abuse of discretion.  The basis for appellant's request was the nolle prosequi of the charges against the step–father as the result of a lie detector test.

The rule in Pennsylvania is that reference to a lie detector test which raises an inference of guilt or innocence is inadmissible.  *Commonwealth v. Camm*, 433 Pa. 253, 277 A.2d 325 (1971).  I would find therefore that there was no abuse of discretion in denying rehearing.

I would affirm the adjudication by the April 6, 1979 Order of Court, finding the daughter, Katherine, dependent.

I would reverse the Order of Court of April 26, 1979, granting custody of Katherine to the Butler County Children and Youth Agency.  I would award custody of Katherine to her natural mother, the appellant, on condition that appellant cooperate with the Butler County Children and Youth Agency which I would direct to supervise the custody of Katherine.  As a further condition, I would require that appellant furnish the Agency with a telephone number at which the Agency can readily contact her.

I would further provide that in the event appellant should refuse to cooperate as specified hereinabove, then the Butler County Children and Youth Agency might apply to the Court of Common Pleas of Butler County for replacement of Katherine, and this Order would in no way prejudice such application.

I respectfully dissent.