579 A.2d 889

**In the Interest of Christopher Michael SMITH, a Juvenile.**

**Appeal of Christopher Michael SMITH.**

Superior Court of Pennsylvania.

Argued June 7, 1990.

Filed Aug. 14, 1990.

626

Basil G. Russin, Chief Public Defender, Kingston, for appellant.

James P. Phillips, Jr., Asst. Dist. Atty., Lake Ariel, for Com., participating party.

Before CAVANAUGH, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

This is an appeal from the March 16, 1990 dispositional Order [1] entered following appellant's adjudication of delinquency on the charge of involuntary manslaughter.[2] Appellant, who was 17 years old at the time, was charged with both voluntary and involuntary manslaughter following the shooting death of Richard Hillman. On December 20, 1989, after an adjudication hearing, the trial judge dismissed the charge of voluntary manslaughter because he found appellant "was justified in killing Richard Hillman for self-protection" (H.T., 12/20/89, p. 9). However, the trial judge found him guilty of involuntary manslaughter because he "was guilty of reckless and grossly negligent conduct when he undertook to introduce a loaded revolver into the differences between him and Richard Hillman" (H.T., p. 11).

The facts leading to Richard Hillman's death, as summarized by the trial court, are as follows:

"The juvenile, Christopher Smith, and his girlfriend, Nicole Gialanella, attended several graduation parties on the evening of the 10th of June, 1989, including one at the home of Lisa Petruskas, not far from the home of the juvenile. They arrived at approximately 10:00 and that was where Nicole had intended to spend the night. Richard Hillman was also at the party. A couple of Chris'

---

**1.** For reasons discussed below, we have ascertained that the date of the final Order is May 1, 1990.

**2.** 18 Pa.C.S.A. § 2504(a).

friends approached him, told him to stay away from Richard Hillman because he was threatening to beat Chris up because Chris was trespassing on his turf." Apparently referring to Chris' escort, Nicole, who had in the past dated Richard Hillman.

Richard did come up to Chris, held up his fingers about four inches apart to show how close he was to beating Chris up. He also said that he could cock back and nail Chris, but he wouldn't do it because Chris was only about 105 pounds. Chris walked away from him and went for a walk with Nicole to avoid trouble.

Richard and one Gerald Gizenski followed them and one of them allegedly threw a bottle that broke at their feet; Nicole being barefoot. Chris also alleged that Rich tried to trip him, but with the help of one Brian Hampel the couple eluded Richard Hillman and returned back to the Petruskas house. It was during this episode that Chris called Rich "a no good drunken bum and he would never amount to anything." Rich got mad, but Brian Hampel held him back.

Chris thereupon left in his car and drove hurriedly away. He went directly home, took a shower and was preparing for bed when he heard a car coming up the driveway. Chris got dressed and went out expecting to see Nicole. Richard Hillman was at the base of the driveway urinating. Chris said to Rich, "I want to settle things peacefully." At this time it was getting light; in other words, day was breaking. Richard said he was going to get even or get back because of what he, Chris, had said at the party.

Then Chris went into the house and into his parent's bedroom and grabbed his father's .22 pistol out of a dresser drawer. It was loaded at the time. It was in a holster and loaded at the time he took it. He went out, met Rich apparently at the patio. Rich gave him a slap with his open hand and grabbed him by the collar of his sweatshirt demanding an apology. Chris said, "I apologize." There was a struggle which carried the two from

the patio through the room door and into the living room and onto a couch. Apparently Chris pushed Richard off him and at that time he, Richard, came around and said that he wanted to shoot a couple of rounds.

They started off the patio and Chris at this time started to put the gun away, retreived [sic] it when he came around. Richard came back to the patio. His mood had changed. Richard Hillman was calling him a pussy and saying that he would not shoot him. He further suggested, "Go ahead and shoot me; it would be self-defense." The juvenile at this time had trouble getting the safety off the gun. Richard came towards him and he raised his fist. The juvenile shot one shot into the air, but it didn't stop the victim, the decedent. Then the juvenile shot once into his body, but he kept coming and the juvenile then shot him in the head. From other evidence in the case death was simultaneous with the shot to the head.

(H.T., pp. 3–5.)

At the March 16, 1990 dispositional hearing, the trial court found appellant in need of care, treatment and rehabilitation and directed that appellant, upon his qualification for high school graduation, be committed to St. Gabriel's, a youth correctional institution, where he would remain until he reached 21 years of age. Appellant was then released into his parents' custody.

Appellant moved for the trial judge's recusal on March 21, 1990, and the court stayed appellant's disposition pending resolution of the motion. On May 1, 1990, the trial court rescinded and vacated the March 21, 1990 Order. On May 7, 1990, appellant moved to modify disposition, and the trial court issued upon the Commonwealth a rule to show cause why the requested relief should not be granted and scheduled a hearing for June 4, 1990. Appellant filed a timely notice of appeal on May 17, 1990, and on May 18, 1990, the trial court issued an Order continuing the reconsideration hearing believing it was without jurisdiction because an appeal had been filed.

This case involves a tragic episode for the two teenagers involved and their families. Procedurally it is in disarray because of a failure to follow the requirements of the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.*, while attempting to conform to the Rules of Criminal Procedure in a manner not provided for by law. The disposition of the case is also in error because the trial court made mutually exclusive findings of fact and conclusions of law, thereby entering a dispositional Order which cannot be legally sustained. The trial court also provided cause for a motion of recusal by his statement, sympathetic to the victim, arising from his own personal family situation, which we need not pass upon in view of our disposition of this case. We touch upon the recusal motion only as it affects the procedural question as to whether or not the case should be quashed and remanded for consideration of that motion and the motion for reconsideration of sentence.

 Initially, we address the Commonwealth's requests to dismiss the appeal due to appellant's failure to file post-trial motions and his untimely motion for modification of sentence. Both appellee and appellant rely on the Rules of Criminal Procedure as the basis for their post-dispositional actions. In *Commonwealth v. Clay,* 376 Pa.Super. 425, 546 A.2d 101 (1988), we dealt with the question of post-trial motions extensively as it relates to appeals in juvenile cases.

We observe at the outset that the Juvenile Act, unlike its predecessors, does not provide for post-trial motions or relief, and the procedures for post-trial review contained in the Pennsylvania Rules of Civil Procedure do not apply to juvenile proceedings unless specifically provided otherwise. Pennsylvania Rule of Criminal Procedure 1(a) provides:

These rules shall govern criminal proceedings in all courts including courts not of record. Unless otherwise specifically provided, these rules shall not apply to juvenile or domestic relations proceedings.

In the note to Rule 1, it is stated:

These rules apply to proceedings involving juveniles only to the extent that the Juvenile Act does not vest jurisdiction in the Juvenile Court. See, e.g., Juvenile Act §§ 6302–6303, 6355, 42 Pa.C.S. §§ 6302–6303, 6355 (1982); Vehicle Code 75 Pa.C.S. § 6303 (1977).

Nor may post-trial proceedings be introduced by reason of local rules as the authority to impose local rules must flow from the Juvenile Act, which does not grant such authority, or pursuant to Rule 1(b) of the Rules of Criminal Procedure, which is not applicable. Pennsylvania Rule of Criminal Procedure 6 provides:

b) Local rules shall not be inconsistent with any general rule of the Supreme Court or any Act of Assembly.

As stated above, Rule 1 provides the Rules of Criminal Procedure do not apply to juvenile proceedings so that a local rule could not impose those rules on such proceedings. Additionally, the Juvenile Act is sui generis and was meant by the legislature to be twofold in purpose: to protect the public interests and rehabilitate youthful offenders. [*In the Interest of*] *McDonough* [287 Pa.Super. 326, 430 A.2d 308 (1981)], *supra*. Because of the difference in function between the Juvenile Act and the Crimes Code, the proceedings of the two are not interchangeable. *In Interest of Leonardo*, 291 Pa.Super. 644, 436 A.2d 685 (1981).

*Id.*, 376 Pa.Superior Ct. at 428, 546 A.2d at 103.

In *Matter of Smith*, 393 Pa.Super. 39, 573 A.2d 1077 (1990), the issue of post-trial motions in juvenile cases was revisited by our Court en banc as it related to proceedings leading to claims of ineffectiveness of counsel. The majority voted 6 to 3 in favor of rejecting post-trial motions in juvenile proceedings and, therefore, the statement and rationale of *Clay, supra,* is controlling.

■ Here, the procedural anomalies occurred first when appellant filed a motion for recusal *after* the disposition hearing. This motion was untimely in that further motions for recusal are not viable after the disposition Order has been entered. *See Reilly by Reilly v. Southeastern Penn-*

*sylvania Transportation Authority,* 507 Pa. 204, 222, 489 A.2d 1291, 1300 (1985) ("[o]nce the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result."). The Order of disposition was entered on March 16, 1990, and the only permissible action following that Order was filing an appeal. We addressed this issue in *Clay, supra,* stating as follows:

> Preliminarily, we must clarify the procedure by and through which this appeal was take as it is incorrect. The Juvenile Act, 42 Pa.C.S. § 6301 *et seq.,* does not provide for the right of appeal. *In the Interest of Mc-Donough,* 287 Pa.Super. 326, 430 A.2d 308 (1981). Article V, section 9 of the Pennsylvania Constitution provides "there shall be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court." The Juvenile Court is a court of record and pursuant to Pa.R.A.P. 341, appeal may be taken as of right from any final order of an administrative agency or lower right from any final order of an administrative agency or lower court. *The final Order of a Juvenile Court is the Dispositional Order as to a Delinquent Child, pursuant to 42 Pa.C.S. § 6352; see McDonough, supra.*

*Clay, supra* at 428, 546 A.2d at 103 (emphasis added).

■ The Order of March 16, 1990 was the Order which should have triggered the appeal. A motion for recusal, if it was to be considered, had to be presented before that Order was entered. A timely objection to the judge's statement and request for recusal or oral motion to continue the dispositional hearing, pending consideration of such a motion, would have effectively resolved the procedural aspects and preserved the right for appeal. Once the dispositional hearing and Order became final, nothing appellant could do would breathe life into such a motion. However, in staying the disposition Order on March 21, 1990, within the 30 days allowed for taking an appeal, pursuant to

accepted procedural practice applicable to appeals, the trial court, in effect, extended the time for taking the appeal to 30 days from the time of reinstatement of the dispositional Order. Pennsylvania Rule of Appellate Procedure 1701, Effect of Appeals Generally, (b)(3)(i), (ii), comes into play only under the circumstance where an appeal has already been taken. The motion for recusal, while untimely, was acted upon by the trial court, in staying the dispositional Order while the case was still within his jurisdiction. This can only be considered as acting upon a motion for reconsideration, as recusal of the trial judge, if granted, could only result in a dispositional hearing de novo by another judge. Despite the errors leading to this result, the dispositional Order was held in abeyance until reinstated.[3] On May 1, 1990, the court rescinded and vacated the Order of March 21, 1990, thereby reinstating the original disposition Order. The motion for modification of disposition filed by appellant on May 7th, while considered by the trial court in issuing a rule to show cause, referable on June 4, 1990, at which time a hearing was scheduled, was never acted upon by the court as he believed he was without jurisdiction, since an appeal had been filed on May 17, 1990. In this respect, the trial court was correct, even if the reason was not, because, as we stated above, the motion to modify is a nullity in a juvenile proceeding. Likewise, Pa.R.A.P. 1701(b)(3), providing for granting reconsideration of a prior Order *after appeal is taken*, requires that the court "expressly grant reconsideration" ("(an Order that "all proceedings shall stay" will not suffice)" Note to Pa.R.A.P. 1701). So despite the procedural convolutions in this case, a timely appeal has resulted, being filed within 30 days of the final Order, entered May 1, 1990. We, therefore, hold that despite the procedural errors by counsel and the court, fundamental justice requires that we consider the merits of this appeal

3. If we were to treat the court's action as a nullity since it acted upon an untimely motion by appellant, the net effect would be to require us to quash this appeal and substantially delay consideration of the merits of this case, pending a habeas corpus action. *See In the Interest of DelSignore*, 249 Pa.Super. 149, 375 A.2d 803 (1977).

as to dismiss the appeal, as suggested by the Commonwealth, would result in a failure to provide a means for appellate review, short of habeas corpus, as P.C.R.A. procedures do not apply to juvenile cases. *See In the Interest of DelSignore,* 249 Pa.Super. 149, 375 A.2d 803 (1977). Additionally, the entire thrust of the Juvenile Act and most legislation involving litigation as to children and families is to provide the most expeditious resolution of appeals possible, consistent with due process. This case illustrates the wisdom of that approach as the dispositional Order was entered on March 16, 1990, and the case was argued in Superior Court on June 7, 1990.

■ We may now address the substantive issue on the merits, which may be stated succinctly as whether the trial court, upon finding the appellant was justified for his self-protection in using force resulting in the death of the victim, may thereafter find him delinquent on the lesser included offense of involuntary manslaughter because he acted in a reckless manner.

The trial court made the following findings of fact and conclusions of law with regard to the charge of voluntary manslaughter:

From this testimony we have made the following findings of fact: No. 1, that Richard Hillman was killed by two pistol shots; No. 2, that Christopher Smith fired the shots that killed Richard Hillman; No. 3, that the juvenile was at his home at the time of the shooting; No. 4, that the juvenile testified that he was in fear of Richard Hillman injuring him to the extent that he, the juvenile, would be a vegetable; No. 5, the decedent was 60 pounds heavier than the juvenile and the juvenile had grounds for feeling threatened and being fearful of the decedent.

Conclusions of law: The juvenile used the deadly weapon on a vital part of the decedent, Richard Hillman; Two, the juvenile claims self-defense as justification; Three, the burden was on the Commonwealth to prove beyond a reasonable doubt that the juvenile was not acting in self-defense; Four, a reasonable doubt existed that the

juvenile was not acting in self-defense; Five, the juvenile, being at home, had no duty to retreat; Six, *the juvenile had reasonable grounds to use force for self-protection; Seven, the juvenile, Christopher Smith, was justified in killing Richard Hillman for self-protection.*

(H.T., 12/20/89, pp. 8–9, emphasis added).

Since we have detailed in length the trial judge's conclusions of law, findings of fact and ultimate disposition and his rationale for the disposition, our role as an appellate court is simply to determine if the court made an appropriate decision within his discretion. We believe the trial court committed reversible error and the only remedy under the circumstances of this case is to vacate the dispositional Order and discharge appellant.

Appellant argues that the court, without foundation, ruled, after finding appellant delinquent on the charge of involuntary manslaughter, that he was in need of treatment, supervision and rehabilitation. Since the only exception to the necessity for such a finding is where "evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation," 42 Pa.C.S. § 6341(b), the argument has substantial merit. Here, the child was without blemish prior to this tragic incident; he was a model student and class president. All evaluations and recommendations by court-appointed experts were to the effect he was not in need of treatment, supervision or rehabilitation, but required counseling to help him deal with the tragic consequences of having taken another's life. It appears that the court's conclusion was unsupported by the evidence.

 The more fundamental error by the trial court, as argued by appellant, was in making mutually exclusive findings of law and fact that the homicide was justified in order for appellant to protect himself and at the same time finding he acted recklessly. Key to this finding is the state of mind of the actor. In *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977), the Supreme Court held the

state of mind which characterizes involuntary manslaughter is not malicious, it is referred to as "criminal negligence" and it is evidenced by acts, whether lawful or unlawful, done in a "reckless or grossly negligent" manner as those terms are defined.[4] *See* 18 Pa.C.S. § 2504. In *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977), the Supreme Court held that under the Crimes Code, murder, voluntary manslaughter and involuntary manslaughter are all classifications of the crime of criminal homicide, 18 Pa.C.S. § 2501. The essential element necessary to sustain a murder conviction which distinguishes murder from involuntary manslaughter is the state of mind of malice. *Id.*, 474 Pa. at 462, 378 A.2d at 1206. Thus, when malice is based on an intent to kill, as exhibited by consciously disregarding an unjustified and extremely high risk that the actions might cause death or serious bodily harm, *Commonwealth v. Taylor*, 461 Pa. 557, 337 A.2d 545 (1975), the recklessness or gross negligence which would support an involuntary manslaughter conviction constitutes a "lesser kind of culpability," Model Penal Code § 1.07(4)(c), than the malice necessary to support a murder conviction. In the latter, the actor consciously disregards, or in gross devia-

**4.** "Recklessly" is defined in 18 Pa.C.S. § 302(b)(3):

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, is disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."

"Negligently" is defined in 18 Pa.C.S. § 302(b)(4):

"A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation."

The Crimes Code definitions of the two types of manslaughter are substantially the same as under prior law. See *Commonwealth v. Moore*, 463 Pa. 317, 330, n. 15, 344 A.2d 850, 857, n. 15 (1975), concurring opinion of ROBERTS, J.).

tion from a standard of reasonable care, fails to perceive a substantial and unjustifiable risk that his action might cause death or serious bodily injury. A plurality decision, *Garcia, supra,* holds it follows that when malice is based on the disregard of an extremely high risk of death or serious bodily harm involuntary manslaughter is a lesser included offense of murder.

 The trial court, in a juvenile case, is the finder of fact and, as such, substitutes for the jury in an *adjudication of delinquency.* Conversely, the trial judge must explain his decision in order to establish for appellate review that his findings of fact and conclusions of law, supported by the evidence, justify the adjudication. In a jury trial, the same function is served by the court's instructions to the jury, and by a jury verdict consistent with the charge and supported by the evidence. While we do not have the same opportunity with a jury to evaluate its findings, as we do here with the findings articulated by a trial judge, the jury is presumed to have acted within the legal parameters established by the court and with a proper evaluation and weighing of the evidence.

 Since voluntary manslaughter and involuntary manslaughter are lesser included offenses of murder and each is at a different point on the continuum of culpability, from the highest being murder to the least being involuntary manslaughter, *see Polimeni* and *Garcia, supra,* it necessarily follows evidence that would support any degree of homicide is sufficient to support a finding of involuntary homicide. Had the trial court found, without more, the evidence was sufficient to support a criminal homicide but only because the homicide was inflicted by the reckless or grossly negligent action of the appellant, it would have presented a stronger case for affirmance, although it would have had to pass the additional test provided by the Juvenile Act, 42 Pa.C.S. 6341(b), requiring treatment, supervision or rehabilitation. However, the trial court first made an unequivocal and firm finding *that the appellant "was justified in killing Richard Hillman for self protection."*

(H.T., p. 9.) In making this finding, which was fully supported by the evidence, it is implicit that the Commonwealth failed to carry its burden of proving beyond a reasonable doubt the homicide was not a justifiable act of self-defense. *Commonwealth v. Mehmeti,* 501 Pa. 589, 462 A.2d 657 (1983). *See Commonwealth v. Patricia Ann Carbone,* 524 Pa. 551, 574 A.2d 584 (1990).

The court, in applying a different set of findings and conclusions to the same facts and evidence, thereafter found the shooting to be grossly negligent and reckless, thereby making a determination that appellant was guilty of involuntary manslaughter, which was irreconcilably in conflict with the previous finding of justifiable homicide. In evaluating the proof required to establish a particular degree of homicide, it becomes readily apparent the elements required in the proof of one degree of homicide force the trial judge to exclude a different level of homicide. As an example, malice and self-defense are mutually exclusive and evidence which was sufficient to support an inference of malice ordinarily would bar the court from examining a claim based on self-defense. *See Carbone, supra; Commonwealth v. Hinchcliffe,* 479 Pa. 551, 388 A.2d 1068 (1978); *Commonwealth v. Heatherington,* 477 Pa. 562, 385 A.2d 338 (1978); *Commonwealth v. Hunter,* 381 Pa.Super. 606, 554 A.2d 550 (1989).

When evidence at trial indicates the defense of self-defense, the burden is on the Commonwealth to prove beyond a reasonable doubt the killing was not in self-defense (in a voluntary manslaughter case). *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975). At this point, the trial court could not pursue the guilt or delinquency of appellant further as a finding of justifiable homicide is mutually exclusive of a finding of involuntary homicide. Voluntary manslaughter is distinguished from murder in that voluntary manslaughter is an intentional killing committed without malice, whereas malice is an essential element of murder. *Heatherington, supra.* To a lesser extent as discussed above, the malice which may be inferred

or implied in a murder case may likewise be implied in an involuntary manslaughter case, resulting in lesser culpability but nonetheless a finding of guilt. When self-defense is the defense, the Commonwealth must exclude self-defense beyond a reasonable doubt as self-defense negates the element of malice. When justification is established and self-defense has not been rebutted beyond a reasonable doubt by the Commonwealth, a jury, or the court without a jury, cannot find both malice and self-defense to be legally established in a murder prosecution when, in fact, the two are mutually exclusive. *Heatherington, supra,* 477 Pa. at 569, 385 A.2d at 342. The same reasoning must apply in relation to involuntary manslaughter when a claim of justification or self-defense is established. Self-defense, if justifiable, is a complete defense to any criminal homicide, whether it be murder, third degree murder, voluntary manslaughter or involuntary manslaughter. The self-defense finding negates all elements of a homicide because the use of deadly force is justified under the conditions which warrant a finding of self-defense. A trial judge is, therefore, precluded from finding, on multiple counts, that a homicide is justified on one count, but that the homicide was not justified because of gross negligence or recklessness on a lesser count, such as involuntary manslaughter. Since the findings are mutually exclusive, and once self-defense is established, the only disposition permitted, regardless of the degree of the homicide, is discharge.

For the above reasons, we hereby reverse the adjudication of delinquency for involuntary manslaughter and discharge the appellant.

Jurisdiction relinquished.

CAVANAUGH, J., concurs in the result.