JUSTICE TRIEWEILER
concurring and dissenting.
¶48 I concur with the majority’s conclusion that two people who have cohabited for a prolonged period of time may, under certain circumstances, owe each other the same duties flowing from their personal relationship as would be owed from one married person to his or her spouse.
¶49 I also concur with the majority’s conclusion that when a person justifiably uses force to defend herself against an aggressor she has no duty to assist her aggressor if to do so would create a risk of harm to her. However, I disagree with, and therefore dissent from the majority’s conclusion that at some point, a victim of aggression who has justifiably defended herself has a “revived” obligation to come to the assistance of the person against whom it was necessary for her to defend herself.
¶50 The majority has concluded that although circumstances occur which are so extreme that a woman is justified in the use of deadly force to defend herself, a jury can, after the fact, in the safe confines of the jury room, conclude that at some subsequent point she was sufficiently free from danger that she should have made an effort to save her assailant and that because she didn’t she is still criminally liable for his death even though at some previous point in time she was justified in taking his life. This result is simply unworkable as a practical matter and makes poor public policy.
¶51 Section 45-3-102, MCA, provides that a person is justified in the use of deadly force only when necessary to prevent imminent death or serious bodily harm to herself or another, or to prevent commission of a forceable felony. It severely limits the circumstances under which deadly force is justified. However, it specifically recognizes that under *163 those circumstances, the amount of force necessary may be deadly. It is inherently contradictory to provide by statute that under certain circumstances deadly force may be justified, but that having so acted, a victim has a common law duty to prevent the death of her assailant. ¶52 Furthermore, I conclude that the obligation imposed by the majority opinion is confusing. It predicates criminal liability on a finding that the failure to summon aid is the cause in fact of death. However, where a person is placed in peril by another’s justified use of force it can never be said that the failure to summon aid, rather than the original act of force, is the cause in fact of death, because presumably death would never have occurred but for the original act of self-defense. For example, the majority correctly notes that in this case, Bonnie Kuntz admits that she stabbed Warren Becker in the chest and that the stab wound caused his death. How then is a jury to distinguish between the original act, which may have been justified, and a failure to summon aid for the purposes of determining the cause in fact of Becker’s death?
¶53 Pursuant to § 45-2-202, MCA:
A material element of every offense is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and which he is physically capable of performing ....
I conclude that when a person is attacked by another and reasonably believes that deadly force is necessary to prevent imminent death or serious bodily injury to herself and therefore uses deadly force to defend herself, she has no duty, “revived” or otherwise, to summon aid for her assailant. The fact that the use of force by her was justifiable as defined by statute is a complete defense to any charge based on her assailant’s death. See In the Interest of Smith (Pa. Super. 1990), 579 A.2d 889, 896-97.
¶54 Nor, has the majority cited any authority for its conclusion that a person who causes another’s death in justifiable defense of herself can be criminally hable for then failing to summon aid for her assailant. There is no authority for good reason. A person driven to the point of having to violently defend herself from a violent attack should not, at the risk of criminal punishment, be required to know that at some undefined point in time she has a duty to save that same person. A normal person under those circumstances is incapable of undertaking such an intellectual process. To require her to do so is inconsistent with the traditional notion that when criminal liability is based on the failure to perform a duty, it must be a plain duty which *164 leaves no doubt as to its obligatory force. State v. Benton (Del. 1936), 187 A. 609, 616.
¶55 For these reasons I dissent from the majority’s conclusion that a person justified in the use of deadly force in self-defense, ever has an obligation to come to the aid of her assailant.
¶56 Other than as specified in the preceding paragraphs, I concur with the majority opinion.
JUSTICE HUNT joins in the foregoing concurring and dissenting opinion of JUSTICE TRIEWEILER.