J-A22041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARQUISE ANTION STANLEY | : | |
| | : | |
| Appellant | : | No. 1103 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 21, 2020
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001060-2019

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 04, 2021**

Appellant, Marquise Antion Stanley, appeals from the judgement of

sentence entered in the York County Court of Common Pleas, following his

jury trial convictions for involuntary manslaughter and carrying a firearm

without a license.[1]  We affirm.

The trial court opinion set forth the relevant facts and procedural history

of this case as follows:

> On October 21, 2018, on the 600 block of Linden Avenue in
> York City, witness Jamie Zortman was waiting for AAA to
> come pick up his broken down truck between 11:00 and
> 11:30 pm.  Mr. Zortman witnessed two men coming from
> Roosevelt Avenue and another man coming from Carlisle
> Road down Linden Avenue and eventually meeting.  The
> area was dark due to tree cover.  Mr. Zortman heard a shot
> and saw people running, then witnessed a person on the
> ground and called 911.  Mr. Zortman testified that the group

_____

[1] 18 Pa.C.S.A. §§ 2504(a) and 6106(a)(1), respectively.

of people were not together for "even a minute" between the time they gathered and hearing the shot.

Officer Christen Batten and Officer Thorne were dispatched to a shooting involving a victim…. When the officers made contact with Ruben Dejesus, (herein "Victim"), … [they] did not see any wounds until after Victim was rolled on his side and then noticed a gunshot wound in the middle of his back. … The officers did not find any weapons such as knives or guns on the victim. Officers throughout their investigation did not find any shell casings. …

The Commonwealth presented two witnesses, Vaughn Torrence (herein "Torrence") and Kaishan Hudson (herein "Hudson"), who were in the vehicle that transported the victim and others for the drug deal. Torrence drove the vehicle to the location for the drug deal; the victim was a passenger in his vehicle. Torrence testified he was not paying attention at the time and it was Marquis Butts (herein "Butts") and Victim who left the car to buy the marijuana from [Appellant]. Hudson was the person who set up the drug deal, however he stayed in the vehicle with Torrence. Hudson testified he was in the car and not more than two minutes had passed when he heard shots and then saw Butts run to the car saying "somebody got shot" and "Ruben got shot."

The Commonwealth presented Butts who accompanied Victim during the drug deal and was a witness to the shooting. Butts testified that Victim and he were facing [Appellant] with their backs to Torrence's vehicle. Butts, testified that he asked [Appellant] to see the marijuana and after [Appellant] pulled it out of his pockets, Butts grabbed it from his hands. Butts further testified that after he grabbed the marijuana, he turned and shots were fired and Victim fell to the ground. Butts testified he heard one shot. [Appellant] gave testimony that conflicted with the Commonwealth's witnesses. [Appellant] claimed that he saw a "bulge" in…the victim's pocket but could not tell if it was a gun or not. [Appellant] testified that Butts stated "stop playing before my man shoots you." [Appellant] then says that Butts after grabbing the marijuana, felt [Appellant's] other pocket and realized [Appellant] had a gun yelled "He's got a gun." After this, [Appellant] testified

- 2 -

that he could not see Victim's whole body, but saw movement out the corner of his eye and believed Victim was going to shoot him. [Appellant] testified that he immediately fired a shot. [Appellant] testified he froze for a second, then got nervous because Victim was not moving, and then immediately took off down the street. [Appellant] fled York to Baltimore, Maryland on the morning of October 23rd.

The Commonwealth and Defense counsel stipulated that on October 21, 2018, [Appellant] did not have a valid and lawfully issued license to carry a firearm.

The Commonwealth also offered the testimony of Doctor Rameen Starling-Roney, (herein "Starling-Roney") an expert in forensic pathology. Starling-Roney found a "mutilated meta jacketed bullet of the millimeter caliber class which was discharged from a firearm..." during his examination of the victim. Starling-Roney, also determined the manner of death in this case as homicide. Starling-Roney held these conclusions within a reasonable degree of scientific certainty.

Following a jury trial on January 21, 2018, through January 23, 2018, the jury unanimously convicted [Appellant] of involuntary manslaughter and carrying a firearm without a license. [Appellant] was sentenced on July 21, 2020. On Count 2, carrying a firearm without a license, [Appellant] was sentenced to three (3) to six (6) years' incarceration in state correctional institution, and directed to pay the costs of prosecution. On Count 5, involuntary manslaughter, [Appellant] was sentenced to two (2) to four (4) years' incarceration in a state correctional institution, with Count 5 to run consecutive to Count 2. On Count 5, the costs of prosecution and restitution of $5,878.00 were imposed. On July 30, 2020, [Appellant] filed a Post-Sentence Motion to request a new trial, which was denied by [the trial c]ourt on August 7, 2020.

(Trial Court Opinion, filed March 5, 2021, at 2-19) (internal record citations omitted).

Appellant timely filed a notice of appeal on August 24, 2020. On

September 1, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied on September 10, 2020.

Appellant raises the following issues for our review:

> Whether the jury verdict as to involuntary manslaughter was against the greater weight of the evidence in that the Appellant was justified in using deadly force?

> Whether the evidence was insufficient to support the jury verdict as to involuntary manslaughter in that the Appellant was justified in using deadly force?

(Appellant's Brief at 4).

In his issues combined, Appellant argues the Commonwealth failed to prove beyond a reasonable doubt that Appellant was not acting in self-defense. Appellant maintains that he was justified in using deadly force because Victim and Mr. Butts' actions placed him in imminent fear of death or serious bodily injury. Appellant contends that testimony from the Commonwealth's witnesses established that Victim and Mr. Butts were attempting to rob him by indicating that they had a firearm. Based on this testimony, Appellant avers that he was not the initial aggressor and did not provoke the incident. Further, Appellant argues that he had no opportunity to retreat safely because Victim and Mr. Butts blocked his path, and he believed he would be shot if he tried to escape. Given these circumstances, Appellant asserts that he was justified in his use of deadly force. Appellant concludes that the evidence was insufficient to support his involuntary manslaughter conviction, the verdict was against the weight of the evidence,

and this Court must vacate his conviction and/or remand for a new trial. We disagree.

Appellate review of a challenge to the sufficiency of the evidence is governed by the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

Additionally,

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

The Pennsylvania Crimes Code defines involuntary manslaughter in relevant parts as follows:

**§ 2504. Involuntary Manslaughter**

**(a) General rule.—**A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a). The Crimes Code defines justification in relevant parts as follows:

**§ 505. Use of force in self protection**

**(a) Use of force justifiable for protection of the person.—**The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

\*    \*    \*

(2)    The use of deadly force is not justifiable

under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A § 505(a), (b)(2). "Self-defense, if justifiable, is a complete defense to any criminal homicide, whether it be murder, third degree murder, voluntary manslaughter or involuntary manslaughter." *In Interest of Smith*, 579 A.2d 889, 897 (Pa.Super. 1990).

Where there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing was not committed in self-defense. In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety. If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue.

*Commonwealth. v. Burns*, 765 A.2d 1144, 1148–49 (Pa.Super. 2000) (internal citations omitted).

- 7 -

Instantly, the following evidence was presented to the jury at trial: (1) Mr. Butts and Appellant testified that Appellant met Mr. Butts and Victim for a drug deal; (2) Appellant testified that he took an illegal gun to the drug deal for safe measure; (3) Appellant testified that he felt uncomfortable when Mr. Butts and Victim first approached him but proceeded with the drug deal; (4) Mr. Butts testified that Victim was only pretending that he had a gun, and Officers Batten and Thorne testified that they did not find any weapons on Victim's person or the surrounding area; (5) Mr. Butts testified that he grabbed the marijuana from Appellant's hand, and Appellant fired one shot after they turned to run; and (6) Doctor Starling-Roney testified that Victim died because of a gunshot wound to the back.

Viewed in the light most favorable to the Commonwealth as verdict-winner, sufficient evidence supported the jury's determination that Appellant did not act in self-defense. *See Jones, supra*. Mr. Butts' testimony and the location of the gunshot wound supported the conclusion that Victim was running away when Appellant shot him. Further, Victim did not have a weapon on his person, and Appellant failed to retreat when he had the opportunity to do so. *See Burns, supra*. Although Appellant provided testimony that contradicted Mr. Butts' account, the jury was free to accept Mr. Butts' testimony and reject Appellant's version of events. *See Champney, supra*. The record supports the court's conclusion that the verdict was not against the weight of the evidence. *See id.* Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Olson joins this memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/04/2021</u>