J-E03004-23

2024 PA Super 171

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                   : PENNSYLVANIA
                                   :
          v.                       :
                                   :
                                   :
KEVIN R. PETERS                    :
                                   :
          Appellant                : No. 2591 EDA 2021

Appeal from the Judgment of Sentence Entered October 15, 2021
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0003901-2020

BEFORE: PANELLA, P.J., LAZARUS, J., STABILE, J., DUBOW, J., KUNSELMAN,
J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and KING, J.

CONCURRING OPINION BY STABILE, J.:          **FILED AUGUST 7, 2024**

I fully concur with the reasoning and disposition of the Majority's opinion but write separately to address several points raised by my learned colleague in her Dissent.

The Dissent *first* suggests that the trial court applied a less stringent malice standard than controlling caselaw permits. An element of both third-degree murder and aggravated assault is that the defendant acted with malice. An impaired driver acts with malice by exhibiting "recklessness of consequences," and a disregard of "unjustified and extremely high risk that his actions might cause death or serious bodily injury." ***Commonwealth v. Kling***, 731 A.2d 145, 147-48 (Pa. Super. 1999).

According to the Dissent, "malice" requires reckless conduct to be exhibited in a way that makes the act "**essentially certain** to cause the death

or serious bodily injury," and it "is insufficient to prove that someone's bad decisions **could have, may have,** or **likely would** result in death or serious bodily injury." Dissenting Opinion, at 8 (emphasis in original). The Dissent finds that the latter standard, applied by the Majority, is "a significant departure from the heightened burden that Pennsylvania courts have routinely required." *Id.*, at 8 n.2.

The Dissent relies heavily on our Supreme Court's decision in *Commonwealth v. Packer*, 168 A.3d 161 (Pa. 2017). However, I respectfully disagree that the case supports the Dissent's position. *Packer* explained that "our courts have **consistently** held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions **might cause** death or serious bodily harm." *Packer*, 168 A.3d at 168 (quotation marks and internal citations omitted, emphasis added).

After reviewing years of precedent on the issue, the *Packer* Court reaffirmed the standard for "malice," holding that it "requires recklessness of consequences and the conscious disregard for an unjustified and extremely high risk that a chosen course of conduct **might cause** a death or serious

personal injury." *Id.* at 172 (emphasis added). The Majority's holding here is completely in line with the holding of that case.[1]

_____

[1] Our Supreme Court over time has consistently described "malice" as knowledge of conduct that "might cause death or serious bodily injury." *See Packer*, 168 A.3d at 166, 171; *Commonwealth v. Ludwig*, 874 A.2d 623 (Pa. 2005); *Commonwealth v. Paddy*, 800 A.2d 294, 324 (Pa. 2002); *In Interest of Smith*, 579 A.2d 889, 895 (Pa. 1990); *Commonwealth v. Young*, 431 A.2d 230, 232 (Pa. 1981); *Commonwealth v. Hare*, 404 A.2d 388, 391 (Pa. 1979); *Commonwealth v. Garcia*, 378 A.2d 1199, 1206 (Pa. 1977); *In re Estate of Klein*, 378 A.2d 1182, at n.21 (Pa. 1977); *Commonwealth v. Taylor*, 337 A.2d 545, 565-66 (Pa. 1975) (Roberts, J., concurring).

So too has the Superior Court, *see Commonwealth v. Akhmedov*, 216 A.3d 307, 316 (Pa. Super. 2019), *appeal denied*, 224 A.3d 364 (Pa. 2020); *Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa. Super. 2019), *appeal denied*, 228 A.3d 256 (Pa. 2020); *Commonwealth v. Thompson*, 106 A.3d 742, 757 (Pa. Super. 2014), *appeal denied*, 134 A.3d 56 (Pa. 2016); *Commonwealth v. Holley*, 945 A.2d 241, 247-48 (Pa. Super. 2008), *appeal denied*, 959 A.2d 928 (Pa. 2008); *Commonwealth v. Smith*, 956 A.2d 1029, 1036-37 (Pa. Super. 2008), *appeal denied*, 989 A.2d 917 (Pa. 2010); *Commonwealth v. Bruce*, 916 A.2d 657, 664 (Pa. Super. 2007), *appeal denied*, 932 A.2d 74 (Pa. 2007); *Commonwealth v. McClendon*, 874 A.2d 1223, 1229 (Pa. Super. 2005); *Commonwealth v. Baskerville*, 681 A.2d 195, 200 (Pa. Super. 1996), *appeal denied*, 689 A.2d 230 (Pa. 1997); and *Commonwealth v. Scales*, 648 A.2d 1205, 1207 (Pa. Super. 1994), *appeal denied*, 659 A.2d 559 (Pa. 1995), although on occasion we have stated that when malice is based on recklessness, conduct must be such that "death or bodily injury would **likely** and logically result." *See Commonwealth v. Luster*, 71 A.3d 1029, 1055 (Pa. Super. 2013) (Ott, J., concurring), *appeal denied*, 83 A.3d 414, (Pa. 2013); *Commonwealth v. Faulk*, 928 A.2d 1061, 1070 (Pa. Super. 2007), *appeal denied*, 944 A.2d 756 (Pa. 2008); *Commonwealth v. Bruce*, 916 A.2d 657, 664 (Pa. Super. 2007), *appeal denied*, 932 A.2d 74 (Pa. 2007); *Commonwealth v. Allen*, 833 A.2d 800, 803 (Pa. Super. 2003), *appeal denied*, 860 A.2d 488 (Pa. 2004); *Commonwealth v. Hackenberger,* 795 A.2d 1040, 1044, (Pa. Super. 2002), *aff'd* 836 A.2d 2 (Pa. 2003); *Commonwealth v. Lowery*, 784 A.2d 795, 802 (Pa. Super. 2001), *appeal denied*, 796 A.2d 980 (Pa. 2002); and *Kling, supra.* It is evident from these cases that when this Court has used the term "*likely*," there has been no indication that a meaning other than "*might*" was intended. The terms have been used interchangeably.

The Dissent would nevertheless adopt a more stringent standard of malice requiring a defendant to be "essentially certain" that his conduct would cause death or serious bodily injury. The Dissent draws this standard from *Packer's* summary of *Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995), where malice was described as a degree of recklessness in which the offensive act was "performed under circumstances which almost assure that injury or death will ensue." *Packer*, 160 A.3d at 170 (quoting *O'Hanlon*, 653 A.2d at 618). Further, "the recklessness must . . . be such that life threatening injury is essentially certain to occur." *Id*. (quoting *O'Hanlon*, 653 A.2d at 618).

But this was not the final word in *Packer*. The Court went on to describe malice as a state of mind in which "the defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions . . . [but] the consequence was ignored." *Id*. (quoting *O'Hanlon*, 653 A.2d at 618). Later in the *Packer* opinion, the Court cited examples of cases where malice was proven, reiterating that "[i]n each of these instances, the defendant could reasonably anticipate that serious bodily injury or death ***would be the likely and logical consequence of his actions***." *Id.* (emphasis added). At the conclusion of the opinion, when issuing its holding, the *Packer* Court again repeated the malice standard as requiring a conscious disregard for the risks of conduct that "might cause a death or serious personal injury." *Id*., at 172.

- 4 -

Accordingly, it does not appear that, by referencing ***O'Hanlon***, our Supreme Court had any intention of applying a more exacting standard for malice as stated by the Dissent here. Instead, the Court has time and again equated malice with reckless conduct that "might cause a death or serious bodily injury." ***See Packer***, 168 A.3d at 172.[2]

I see as the Dissent's *second* error its statement that Appellant's life-threatening decisions leading up to the accident were irrelevant to the issue of malice. Appellant's decision to drive his vehicle instead of taking a train or taxi, and to use a highway rather than a local road, are in the Dissent's view, of no moment. ***See*** Dissenting Opinion, 8-9. Further, the Dissent construes the decision to drive while intoxicated as incidental to the offense of DUI, reasoning that every DUI homicide would result in a third-degree murder conviction if that fact alone evidences a defendant's malice. ***Id.***, at 8.

By viewing those lone facts in isolation, I believe the Dissent fails to appreciate both the role of the fact-finder and our standard of review. Appellant's decision to drink and drive on a highway was but one piece of the totality of the circumstances which the jury was entitled to consider. On

---

[2] Admittedly, the ***Packer*** Court created some tension in using the somewhat incompatible terms, "essentially certain" and "might." We must nevertheless accept the Court's latest and final statement of the law that "[t]he standard for malice enunciated in ***Dunn****,* reiterated in ***O'Hanlon*** and reaffirmed today requires recklessness of consequences and the conscious disregard for an unjustified and extremely high risk that a chosen course of conduct ***might cause a death or serious personal injury***." ***Packer***, 168 A.3d at 172 (emphasis added).

- 5 -

review of a ruling on evidentiary sufficiency, we must construe *all the evidence* admitted at trial in the light most favorable to the verdict winner, and then determine if there was any record evidence that would establish every element of a crime beyond a reasonable doubt. **See Commonwealth v. Smith**, 97 A.3d 782, 790 (Pa. Super. 2014).

While a single fact alone may not support malice, its contribution to the totality of the facts in a case may lend itself to such a finding. **See Commonwealth v. Dunphy**, 20 A.3d 1215, 1219 (Pa. Super. 2011). Indeed, the Court upheld a finding of malice in **Packer** because there was evidence that the defendant's reckless conduct had ensued after "she decided to drive a vehicle under the influence of [inhaling difluoroethane, DFE]. **Packer**, 168 A.3d at 172.

As importantly, I find the Dissent's *third* error to be in interpreting our precedent to require that advance "warning" or "notice" must have been given to Appellant prior to the accident in order for a finding of malice to be made. This precondition was inferred by the Dissent from our Supreme Court's opinion in **Packer** despite that the terms, "notice" and "warning" were never used in that decision.

The Dissent suggests that "notice" or "warning" are shorthand references to the malice standard, which is met "when a perpetrator consciously disregards an unjustified or extremely high risk that his actions might cause death or serious bodily injury." **See** Dissenting Opinion, at 4 n.1.

The Dissent's application of its "shorthand," however, belies its contention that it is using "notice" and "warning" merely as substitutes for the established standard for "malice."

For example, the Dissent dismisses the 911 calls of Nicholas Hafto and Scott Emerick that described Appellant's driving as negligent, careless, and reckless because neither of these drivers attempted to *communicate* to Appellant that he was driving in that manner. ***See id***., at 10-11. The Dissent dismisses the lack of illumination on Appellant's car since he was never *alerted* to any issues with his lights. ***Id.*** at 13 n.7. The Dissent dismisses Jacquelyn Smith's offer to provide a ride to Appellant because she did not first *warn* him that he had consumed too much alcohol to drive safely. ***Id.*** at 11-12. The Dissent also concludes that none of the following constitute the "warning" necessary to support a finding of malice: Appellant's inability to operate the parking kiosk, record silence as to whether Appellant had a history of drunk driving, and knowledge that every adult knows the dangers of alcohol. ***Id.*** at 9-10.

Our caselaw does not speak to whether any of those specific scenarios necessarily inform a motorist that continuing a pattern of conduct would rise to the level of what a court would call "malice." Instead, such incidents would constitute the unique facts of a case that when considered in totality, may or may not prove that state of mind. I do not question that if a defendant receives a "warning" about the risks of his conduct that such evidence may be

- 7 -

probative as to whether he had a conscious disregard of an extremely high risk that death or personal injury might occur. *See Commonwealth v. Urbanski*, 627 A.2d 789, 793 (Pa. Super. 1993) (appellant recklessly disregarded wife's protests about the risks of his erratic driving and the probability of a tragic result). But that *is a far different than a judicial rule that prohibits a finding of malice where the defendant did not receive warning from a third-party regarding the risks of his conduct.* As such a rule would depart from our established precedent and constitute judicial fact-finding, it was properly rejected by the Majority.

Finally, I take issue with the Dissent's *fourth* and final error in what I consider to be reweighing several pieces of evidence to support its conclusion that malice was not proven. The common thread in each of these instances is, I believe, that the Dissent has usurped the role of the fact-finder by drawing inferences in Appellant's favor despite that an opposite inference may reasonably be drawn from the evidence.

The Dissent states that Smith's offer of a ride home could not contribute to a finding of malice because she also offered a ride to every co-worker on the night in question, she too was drinking alcohol, and she did not warn Appellant that he had consumed too much alcohol to drive. *See* Dissenting Opinion, at 11-12. But viewed in the light most favorable to the Commonwealth, the jury could have inferred from Smith's offer to Appellant

that she was concerned about his ability to drive regardless of her offer to drive other co-workers home.

The Dissent states that all of the video evidence presented at trial established that Appellant's headlights were on and functioning, precluding the jury from finding malice based on the reports given by Hafto and Emerick that the lights appeared to be off prior to the accident. *Id.* at 13 n.6. At best, however, there was conflicting evidence as to whether Appellant consciously disregarded the danger of not having his vehicle illuminated. This was an issue for the jury, and I see no basis in the law or in the facts of this case to state, as the Dissent does, that we must presume Appellant reasonably thought the lights were operational because he never received "warning" or "notice" to the contrary.

The Dissent next states that Appellant's malice, or sustained recklessness, could not be proven because he at times drove below the speed limit, he exited the highway safely, and Hafto and Emerick reported that Appellant attempted to avoid colliding with their vehicles. These facts, however, must be viewed in a light most favorable to the Commonwealth, and as part of the totality of all the other facts in the case. As such, the jury was free to disregard those facts as evidence that Appellant lacked malice; the jury was also free to consider other evidence of his conduct as proof of reckless driving.

The Dissent's impermissible reweighing of the evidence is best illustrated by its treatment of the "black box" analysis given by the state police accident reconstructionist, Corporeal Brianne Glad. The Dissent suggests that Appellant could not have acted with malice as a matter of law because the accident reconstruction showed that he applied the brakes of his vehicle four-tenths of a second prior to the crash. *See id*., at 12-14. Here again, the Dissent overlooks that the jury was entitled to consider this evidence in a more culpable light, and in the context of all the surrounding circumstances.

It is undisputed that, at the time of impact, Appellant was driving **115 MPH**, which was 60 MPH over the posted limit. At that speed, Appellant covered 168 feet per second,[3] making it impossible for nearly any driver to maintain control. Yet, while travelling at such an excessive speed that maneuvering the vehicle safely was impossible, Appellant made a conscious decision to take his eyes off the road and reach for his phone. Any attempt to brake less than half a second before impact would have been rendered futile by numerous other reckless decisions he had already made that night.

These circumstances were, in my view, sufficient for the jury to find malice despite Appellant's purported attempt to apply his brakes. The jury

---

[3] Miles per hour (MPH) may be converted to feet per second by multiplying MPH by the value, 1.467. *See* Miles per Hour to Feet per Second Converter, available at https://www.inchcalculator.com/convert/mile-per-hour-to-foot-per-second/ (last visited July 2, 2024).

was in no way bound to find a lack of malice simply because Appellant made, at most, a token effort to avert disaster. Moreover, the evidence that the brake was applied in Appellant's vehicle was not necessarily exculpatory as the Dissent presumes – it was just as probable that Appellant touched the brake pedal inadvertently while reaching for his phone on the floor of his vehicle.[4] Again, this Court must construe the evidence in the light most favorable to the Commonwealth, not Appellant. Thus, the Dissent's recasting and reweighing of the evidence violates our standard of review and invades the fact-finding prerogative of the jury.

Having addressed what I consider to be the problematic aspects of the Dissent, I wish to conclude by highlighting the prevalent, predictable, tragic and senseless harm caused by those who decide to drink and drive.

According to the National Highway Safety Administration, "[e]very day, about 37 people in the United States die in drunk-driving crashes — that's one person every 39 minutes. In 2021, 13,384 people died in alcohol-impaired driving traffic deaths — a 14% increase from 2020."[5] For years, national

_____

[4] I would further add that the Dissent makes a leap in assuming that Appellant's attempt to brake was a "conscious" attempt to avoid a collision or display concern for others, precluding a finding of malice. At that speed, and at Appellant's level of intoxication, the jury could have inferred that an attempt to brake was merely reflexive, and not indicative of a break in the chain of sustained recklessness.

[5] *See* Drunk Driving Overview https://www.nhtsa.gov/risky-driving/drunk-driving#:~:text=Overview,a%2014%25%20increase%20from%202020 (last visited July 2, 2024).

- 11 -

campaigns and public service announcements have responded to these statistics by warning against drinking and driving, making it impossible for any driver to credibly claim not to know that such conduct is often fatal. Yet, it appears that this destructive behavior remains unabated.

I therefore find it worth repeating the words of the dissent in *Commonwealth v. O'Hanlon*, 653 A.2d 616 (Pa. 1995) (Papadakos, J., dissenting), which aptly capture the frustration and senseless loss of lives due to drunk driving as we once again are forced to consider the issue of malice in that context:

> In this day and age when thousands and thousands of innocent travelers upon the nation's highways are being mangled and slaughtered each year by drunken drivers, the time is long past due when this court must say STOP, ENOUGH IS ENOUGH! Drunk drivers are brainless lethal weapons.
>
> Is there anyone in America today who has been licensed to drive that does not know of the dangers of driving while in a state of intoxication? How can we say that a person who voluntarily drinks intoxicating beverages knowing that he or she will most likely drive a motor vehicle during the drinking session, or shortly thereafter, is not acting under circumstances manifesting extreme indifference to the value of human life?

*O'Hanlon*, 653 A.2d at 618-19 (Papadakos, J., dissenting).

These sentiments ring as true today as they did when they were expressed nearly 30 years ago. For that reason, I believe that they should continue to inform our approach to the legal standards that govern criminal liability for driving under the influence. Drunk driving is so inherently

dangerous that its deadly consequences cannot reasonably come as a surprise to those who knowingly expose others to that risk.

President Judge Panella, Judge Murray, and Judge King join the Concurring Opinion.